Ken Wise, Justice
A jury convicted appellant of assaulting a family member, elevated to a felony by a prior conviction for a similar offense. See Tex. Penal Code § 22.01(b)(2)(A). On original submission, a divided panel of this court sustained appellant's ineffective-assistance challenge, reversed appellant's conviction and remanded for a new trial. The State filed a motion for rehearing. We grant the State's motion, withdraw the majority and dissenting opinions of September 19, 2017, and issue this opinion on rehearing.
In a single issue, appellant contends that his counsel rendered ineffective assistance by (1) failing to investigate and present testimony from several alibi witnesses, (2) failing to object to hearsay and request a limiting instruction regarding prior inconsistent statements made by the complainant, (3) stipulating to more than one jurisdictional prior conviction, and (4) failing to object to evidence of extraneous offenses at punishment or to request a beyond-a-reasonable-doubt instruction.
Trial counsel has not been afforded the opportunity to explain her actions, and appellant has not rebutted the strong presumption of reasonable professional assistance.
*471 Thus, under the deferential standard of review for ineffective-assistance claims raised for the first time on direct appeal, we must affirm.
I. BACKGROUND
A. Indictment and Plea
The State indicted appellant for felony assault against a family member-a person with whom appellant had a dating relationship. The State alleged that appellant caused bodily injury by striking the complainant with the appellant's hand. To elevate the crime to a felony, the State was required to allege and prove one prior family-violence assault conviction. See Tex. Penal Code § 22.01(b)(2)(A). The indictment alleged four prior convictions from April 2009, May 2011, November 2013, and July 2015.
B. Voir Dire
The State discussed "recanting victims" during voir dire and asked the venire if they could "figure out which version is the truth because, you know, a lot of times there are situations like this with a recanting victim." The State told the venire that in a situation with a recanting victim, they would "decide on which version is the truth."
Appellant's trial counsel told the venire that sometimes people lie. She said that when a witness gets on the stand, the jurors would "judge whether you believe, as a juror, whether they're lying or not." Counsel asked the venire why a person might lie, and she said that sometimes people might not tell the truth to police officers.
C. Reading Indictment and Pleading
After voir dire, the State read the entire indictment in front of the jury, including the allegations of four prior convictions for family-violence assault. Appellant pleaded "not guilty." Then, the trial court asked whether appellant was pleading "true" or "not true" to each "enhancement" paragraph.[1] Appellant pleaded "not true" to the April 2009 conviction and "true" to the other three.
D. Opening Statement
Trial counsel made an opening statement, contending that the evidence would show that the complainant was high on acid the night of the alleged offense. Counsel said that the complainant made a statement to the police, but she was "mad at him, and she knew how to put him in jail." Counsel said that the complainant realized "what repercussions can come from a big lie." Counsel finished her statement by explaining a decision the jury would need to make in this case:
So then it's going to come to you: Was she lying then? Is she lying now or did she lie or is she a liar? And if she's a liar, is she a liar for all purposes or is she a liar sometimes? That'll be up to you. She's a grown woman. Thank you.
E. Guilt-Innocence Evidence
The parties do not dispute the existence of a dating relationship between appellant and the complainant. But, evidence of the assault was contested. At about 4:45 a.m. on the morning of the incident that led to the indictment, the complainant's former friend dialed 911 to report that appellant had "beat the hell out of" the complainant. A recording of the 911 call was admitted as *472 an exhibit. The friend testified that the complainant had called the friend and said that appellant had "beat her up real bad." The friend did not live nearby and was not present during the assault.
A City of Alvin Police Department officer testified that he responded to the call. He described the complainant as being very distraught and crying. He did not believe that the complainant was impaired by any narcotics at the time.
The officer's body-worn camera footage was admitted as an exhibit in its entirety. In the video, the complainant told the officer that appellant had been at the house of appellant's friend.[2] The complainant said that appellant returned home to charge his iPhone at about 4:00 a.m. He was drunk and "on bars," and a disagreement ensued about whether the complainant had taken his phone. The complainant told the officer that appellant started beating her and hit her in the back of the head with his fist.
The complainant said that appellant beats her every week, and he had choked her a week before. She said that he "always" beats her in the back of the head so nobody can see it. She said that appellant beat her last October and went to jail for it, and she got him out by signing an affidavit of non-prosecution. She said that she did not like appellant seeing his friend because the friend was a "crack head" who used appellant to sell drugs.
When the officer asked if the complainant wanted to file charges, she said that appellant said that appellant's friends would "go after" her family. She said that appellant had been in and out of prison and was a thug. She said that appellant threatened to kill her whole family and rape her mother and daughter. She said that appellant's friends would lie for him and say that he never left his friend's house that night. She said that appellant had been texting her, saying that all his friends had been with him and heard his "big mouth all night."[3] She also said that appellant took $200 from her, that he never works, and that he just "takes, and takes, and takes."
An emergency medical technician looked at the complainant's head and told the officer that there was a quarter-size knot on the back. At trial, a picture of the back of the complainant's head was admitted as an exhibit. The complainant made a brief written statement concerning the events and her desire to prosecute. When the officer returned to his patrol car to do a warrant check, the body camera recorded him saying, "She's not going to cooperate anyways once it gets to court; she's going to do exactly what she did the last time."
The officer was correct. Shortly before trial, the complainant gave a written statement to the district attorney's office, claiming that she had lied in her earlier statements. The State called her as a witness at trial, nonetheless. She testified that she was "tripping on acid" that night. She testified that she injured her head because she slipped and fell off her porch. She testified that appellant never hit her. She had been mad at appellant because she was not invited to the other house, and she thought appellant was "over there with other chicks." She testified that her former friend had a vendetta against appellant because the complainant started dating appellant only three months after the complainant's late husband had died. The complainant believed that her friend was *473 trying to get the complainant in trouble; the complainant had told her friend that the complainant was high and had "dope" in the house. The complainant claimed to have lied to the police because she was scared they would find acid in her house. Through questioning by the State, the complainant also admitted to making many of the allegations in her first written statement to police.[4]
The State also called the complainant's adult son, who was in jail at the time of trial. He testified that he had observed the complainant high on acid in the past. He corroborated the complainant's story about how and when she bought the acid: he directed her to his friend who used to sell it.
After the State's witnesses testified, appellant's trial counsel stipulated to the three allegations of jurisdictional prior convictions to which appellant had pleaded "true." The State abandoned the first allegation. The trial court admitted Exhibits 5, 6, and 7. Exhibit 5 is the complaint, information, docket entry, and judgment concerning appellant's May 2011 conviction for "assault causes bodily injury family violence," committed by striking the person "about the body with the defendant's hand." The judgment shows that appellant pleaded guilty and was assessed punishment at twenty-two days' confinement. Exhibit 6 is a November 2013 judgment of conviction for "assault family violence," showing that appellant pleaded "guilty" and was assessed punishment at ten months' confinement. Exhibit 7 is a July 2015 judgment of conviction for "assault causes bodily injury family member," showing that appellant pleaded "guilty" and was assessed punishment at thirty days' confinement.
Appellant testified on direct examination that he did not hit the complainant, and he had left the house sometime between 7:00 p.m. and 9:00 p.m. that night to go to his friend's house. He testified that he drank a lot that night, and he did not go home. He admitted that he was a "pothead." He also admitted that for two of the prior convictions, he was "completely guilty." But for the last one, he claimed that the complainant had attacked him with a broomstick, and he pleaded "guilty" because "they held me in jail so long." He had only pushed her away to keep himself from getting hurt.
On cross-examination, appellant agreed that he had "already stipulated true" for the convictions from Exhibits 5, 6, and 7.[5]
*474 Appellant agreed with the State that he was convicted of "family violence" in April 2009 and "assault family violence" in November 2013.[6] He also testified that he had been convicted of assaulting the complainant about a year and a half before this trial, but he "didn't do it." He testified that he had two theft convictions and that he was convicted of felony theft in May 2011. He acknowledged that he pleaded "guilty" to a "state jail offense of theft with two or more priors," but he did not consider himself a thief. He did not consider his "theft by check" conviction in 1998 to be a "theft." He testified that he was "thrown in jail forever" on the theft charge. And, he admitted that he was convicted of attempted escape and served forty-eight days in state jail on that charge.
F. Closing Arguments
During closing argument, the State told the jurors to focus on the body camera footage because the "body camera doesn't lie." And the State noted that the complainant's written statement was not admitted, but "the words of her statement came in" through her testimony on the witness stand. The State emphasized that appellant was a convicted felon who had been "convicted of abusing her before." The State told the jury to "keep that in mind when judging his credibility," and the State pointed out that appellant had "stipulated to those priors." The State referred to the complainant as a "puppet" and described the situation as "[c]lassic battered women." The State asked the jury to "send a message to him that this has got to stop."
Defense counsel argued that the complainant had lied to the police because she was on acid and scared of having her house searched for the remaining drugs. Counsel also addressed the prior convictions, pointing to language in the jury charge stating that the jurisdictional prior convictions could not be used for any purpose in determining guilt.[7] Counsel explained, "Just because someone kicked their dog yesterday doesn't mean they kicked their dog today."
G. Punishment
Appellant went to the jury for punishment. The court admitted Exhibits 4 and 9 through 22 concerning appellant's criminal history.[8] Appellant testified at punishment *475 and explained that he got an evading-arrest conviction because he had accumulated some speeding tickets, and an officer had told him "if he caught me driving again he was going to take me to jail." He got a theft conviction because his former girlfriend's mother stole his checkbook, and he "couldn't sort them out," and he wrote two bad checks for groceries. He explained that he got another theft conviction because he was "hanging out with the wrong people," and a woman had stolen a pair of pants, and appellant had offered to pay for them. Regarding his various assault convictions, appellant testified, "I guarantee you, in every one of those assault charges, I was the one that was beat up."
On cross-examination, appellant testified that he received a conviction for unlawfully carrying a handgun because he bought the gun for his dad. Regarding a prior criminal-mischief charge, appellant claimed that the complainant in that case drove over appellant and "broke the whole right side of my body." Regarding a prior conviction for interfering with an emergency call, appellant claimed that his sister threw a phone at him and "hit me upside the head and knocked me out." He acknowledged that his April 2009 conviction for "assault causes bodily injury family violence" was against a woman he went to high school with, and his May 2011 conviction for "assault causes bodily injury family violence" was against his sister. His November 2013 conviction for "assault family violence" was against his brother.
Appellant agreed with the State that he had been arrested about twenty-five times. When the State asked if appellant agreed with the jury's verdict, appellant responded, "Show me where you found me guilty. Show me where you put me in the house. I got two other friends that'll come up here and testify right now that I was at their house all night."[9]
The jury charge on punishment did not instruct the jury that to consider extraneous crimes or bad acts, it had to be shown *476 beyond a reasonable doubt that appellant committed the crime or bad act.
The jury assessed punishment at seven years' confinement.
H. Motion for New Trial
Appellate counsel filed a motion for new trial in the trial court. The sole ground alleged that the verdict was "contrary to the law and evidence." At a hearing on the motion, three witnesses testified: appellant's brother and two of appellant's friends.
The witnesses testified similarly that they were at appellant's friend's house with appellant on the night of the alleged offense, that no attorney contacted them to discuss the facts of the case, and that they would have been available to testify. The two friends, a couple, testified that appellant was in the garage when the couple went to sleep at about 1:00 a.m. or 2:00 a.m. They testified that appellant slept in the garage and was found there at about 9:00 a.m. Appellant's brother testified that appellant was passed out in the garage when the brother left at 2:38 a.m. The brother testified that the complainant had a bad reputation for truthfulness and she tended to lie about everything. One of the friends-the one that the complainant had alleged during the video recording was a crackhead who used appellant to sell drugs-testified that he did not allow the complainant at his house because she was loud and very problematic.
Neither trial counsel nor appellant testified at the hearing. At the conclusion of the hearing, appellate counsel argued that "those witnesses should have at least been called during the course of the trial." There was no mention of ineffective assistance of counsel. The trial court denied the motion for new trial.
II. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL
First we review the general standards for ineffective assistance. Then we address each of appellant's contentions, concluding that the record does not rebut the presumption of reasonable professional assistance.
A. General Standards
To prevail on a claim of ineffective assistance, an appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the appellant prejudice-there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington , 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ; Perez v. State , 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). An appellant must satisfy both prongs by a preponderance of the evidence. Perez , 310 S.W.3d at 893.
Generally, a claim of ineffective assistance may not be addressed on direct appeal because the record usually is not sufficient to conclude that counsel's performance was deficient under the first Strickland prong. See Andrews v. State , 159 S.W.3d 98, 103 (Tex. Crim. App. 2005) ; see also Salinas v. State , 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) ("A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim."). Ordinarily, trial counsel should be afforded an opportunity to explain counsel's actions "before being denounced as ineffective." Rylander v. State , 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). A defendant is not entitled to "errorless or perfect counsel whose competency of representation is to be judged by hindsight."
*477 Robertson v. State , 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Every effort must be made to "eliminate the distorting effects of hindsight." Id.
"Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." Salinas , 163 S.W.3d at 740. "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." Id. (quotation omitted).
It is the "rare case" when an appellant raises a claim of ineffective assistance on direct appeal and the record is sufficient to make a decision on the merits. Andrews , 159 S.W.3d at 103. We must presume that trial counsel's performance was adequate unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." State v. Morales , 253 S.W.3d 686, 696-97 (Tex. Crim. App. 2008) (quoting Goodspeed v. State , 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ). To clear the hurdle of establishing deficient performance on direct appeal, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of [counsel's] subjective reasoning." Lopez v. State , 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). If there is a potential reasonable trial strategy that counsel could have been pursuing, we cannot conclude that counsel performed deficiently. See Andrews , 159 S.W.3d at 103.
B. Failing to Investigate Witnesses
Appellant contends that trial counsel was ineffective for failing to investigate and interview appellant's friends and brother who testified at the hearing on the motion for new trial.
Trial counsel must make an independent investigation of the facts of the case. McFarland v. State , 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). But the duty to investigate is not categorical. Id. Thus, trial counsel may "make a reasonable decision that makes particular investigations unnecessary." Id. (quoting Strickland , 466 U.S. at 691, 104 S.Ct. 2052 ). Like any claim of ineffectiveness, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Butler v. State , 716 S.W.2d 48, 54 (Tex. Crim. App. 1986) (quoting Strickland , 466 U.S. at 691, 104 S.Ct. 2052 ). A conviction will not be reversed for a failure to investigate unless the consequence of the failure "is that the only viable defense available to the accused is not advanced." McFarland , 928 S.W.2d at 501 (quoting Ex parte Duffy , 607 S.W.2d 507, 517 (Tex. Crim. App. 1980) (plurality op.), overruled on other grounds by Hernandez v. State , 988 S.W.2d 770 (Tex. Crim. App. 1999) ); see also State v. Thomas , 768 S.W.2d 335, 336-37 (Tex. App.-Houston [14th Dist.] 1989, no pet.) ("Criminal defense counsel has a responsibility to seek out and interview potential witnesses and the failure to do so is to be ineffective where the result is that any viable defense available to the accused is not advanced.").
The record is silent as to counsel's reasoning for not interviewing these witnesses, and counsel advanced a viable defense at trial: that the complainant had been high on acid and lied to the police because she feared her house would be searched and drugs discovered. Through the complainant's testimony, counsel also advanced a theory that the complainant's *478 friend was biased against the complainant and appellant. Given that the new witnesses did not provide appellant with a complete alibi defense,[10] and that trial counsel advanced a viable defense, we cannot conclude on this silent record that counsel's reasoning for not interviewing the witnesses was devoid of strategy. See McFarland , 928 S.W.2d at 501 ; see also Perez , 310 S.W.3d at 895-97 (holding that the defendant did not establish prejudice from trial counsel's failure to investigate a potential alibi witness because the witness's testimony did not show that it was physically impossible for the defendant to commit the crime).
Counsel reasonably could have concluded that presenting evidence of an incomplete alibi defense would obfuscate the primary defense and bolster the complainant's out-of-court assertion that appellant's friends would lie for him. Based on the available record, we cannot conclude that counsel's conduct was so outrageous that no competent attorney would have engaged in it.
C. Failing to Object to Hearsay and Request a Limiting Instruction
Appellant contends that trial counsel was ineffective for failing to object to the State's examination of the complainant concerning her prior inconsistent written statement to police because the evidence was hearsay. Furthermore, appellant contends that trial counsel should have requested a limiting instruction because the content of the written statement was only admissible for the limited purpose of impeaching her testimony at trial. Appellant relies on Owens v. State , in which the Waco Court of Appeals reasoned, "There is no plausible strategy to pass over the admission of the only evidence of a defendant's guilt which is also 'clearly inadmissible' as substantive evidence." 916 S.W.2d 713, 719 (Tex. App.-Waco 1996, no pet.) (quoting Ex parte Menchaca , 854 S.W.2d 128, 132 (Tex. Crim. App. 1993) ).
To demonstrate ineffective assistance based on a failure to object to evidence, appellant must show that the trial court would have committed harmful error by overruling the objection had trial counsel objected. See, e.g. , Barfield v. State , 464 S.W.3d 67, 72 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd). Generally, there is no strategic value "to pass over the admission of prejudicial and clearly inadmissible evidence." Ex parte Menchaca , 854 S.W.2d at 132 (quoting Lyons v. McCotter , 770 F.2d 529, 534 (5th Cir. 1985) ). But, to "pass over the admission of prejudicial and arguably inadmissible evidence may be strategic." Id. (quoting Lyons , 770 F.2d at 534 ). It may be strategic to not object to inadmissible hearsay, for example, if trial counsel "at that moment may have reasonably decided that the testimony was not inadmissible." Thompson v. State , 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (no deficient performance on a silent record as to why trial counsel failed to object to the State's "artful questions" as the State "doggedly pursued *479 the introduction of inadmissible hearsay"); see also Lopez v. State , 343 S.W.3d 137, 141, 143-44 (Tex. Crim. App. 2011) (no deficient performance on a silent record as to why counsel failed to object to inadmissible hearsay; possible strategy included exposing inconsistencies in outcry statements).
Generally, the State may not impeach its own witness as subterfuge for offering inadmissible hearsay. See Ramirez v. State , 987 S.W.2d 938, 944 (Tex. App.-Austin 1999, pet. ref'd) ; Pruitt v. State , 770 S.W.2d 909, 909 (Tex. App.-Fort Worth 1989, pet. ref'd) ; see also Miranda v. State , 813 S.W.2d 724, 735 (Tex. App.-San Antonio 1991, pet. ref'd) ("There has always been a danger that a party may attempt to use a prior inconsistent statement under the guise of impeachment for the primary purpose of placing before the jury evidence which is not otherwise admissible and which may be treated as substantial evidence.... A party should not, however, be permitted to use a straw-man ploy to get impeachment evidence before the jury as substantive evidence."). Faced with a proper Rule 403 objection, a trial court abuses its discretion "when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." Hughes v. State , 4 S.W.3d 1, 5 (Tex. Crim. App. 1999) (holding that when the State elicited no favorable testimony from a witness, the trial court erred by allowing the State to impeach the witness with hearsay under the guise of impeaching the witness with prior inconsistent statements). "The impeachment evidence must be excluded under Rule 403's balancing test because the State profits from the witness' testimony only if the jury misuses the evidence by considering it for its truth." Id.
In a case similar to Owens , the Austin Court of Appeals reasoned that there was no plausible trial strategy for failing to object to inadmissible hearsay offered under the guise of a prior inconsistent statement from a hostile witness. See Ramirez , 987 S.W.2d at 944-46. The court distinguished other cases that had found counsel could have operated under a sound trial strategy by failing to object to prejudicial hearsay because the hearsay in those cases was cumulative of other evidence. See ids="11596622" index="46" url="https://cite.case.law/sw2d/987/938/#p944">id. at 945-46. In Ramirez , like in Owens , it was the absence of other probative evidence of guilt that made it impossible to characterize as trial strategy counsel's failure to object to hearsay. Id. (citing Owens , 916 S.W.2d at 718-19 ).
In another case, this court reached a different result because the hearsay that counsel failed to object to was not the only evidence in the record supporting a conviction. See Kesaria v. State , 148 S.W.3d 634, 639 & n.1 (Tex. App.-Houston [14th Dist.] 2004), aff'd , 189 S.W.3d 279 (Tex. Crim. App. 2006) ; see also Young v. State , 10 S.W.3d 705, 712 (Tex. App.-Texarkana 1999, pet. ref'd) (holding that trial counsel's failure to object to hearsay could have been a strategic decision "so as not to call attention to damaging evidence" that was merely cumulative).
Based on the silent record, we cannot conclude that trial counsel had no strategic reason for failing to object to the State's questioning of the complainant about her prior inconsistent statements. Unlike in Owens , the objectionable hearsay was not the only evidence of guilt. Rather, the jury also viewed the police officer's body-worn camera footage, which included the complainant's oral statements that were largely cumulative of the written statement. Appellant does not complain about trial counsel's failure to object to that exhibit. Indeed, trial counsel reasonably may have *480 concluded that the complainant's oral statements on the same subject were admissible as excited utterances, given counsel's own viewing of the recording and the officer's testimony that the complainant was very distraught and crying. See Moon v. State , 44 S.W.3d 589, 594-95 (Tex. App.-Fort Worth 2001, pet. ref'd) (holding that domestic assault victim's oral statements to police were excited utterances but subsequent written statements were not). Thus, appellant has not demonstrated on appeal that had the trial court erroneously admitted the objectionable evidence, any error would have been harmful. Cf. ids="11104146" index="53" url="https://cite.case.law/sw3d/44/589/#p594">id. (harmless error to admit written statements because they contained essentially the same information as the admissible oral statements).
On this record, we cannot conclude that counsel was deficient for failing to object to the State's elicitation of hearsay from the complainant. See Kesaria , 148 S.W.3d at 639 & n.1. And, we reach the same conclusion regarding the failure to request a limiting instruction for this evidence. See Delgado v. State , 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) (noting that "Texas courts have frequently stated that the decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy" so as to minimize the jury's recollection of the unfavorable evidence); see also Ali v. State , 26 S.W.3d 82, 87-88 (Tex. App.-Waco 2000, no pet.) (distinguishing Owens because the hearsay in this case was not the only evidence of guilt and trial counsel may have "purposefully decided not to request a limiting instruction to prevent further attention being drawn to the alleged incriminating statements").
D. Stipulating to Prior Assault Convictions
Appellant contends that trial counsel was ineffective by failing to stipulate to only one prior conviction alleged in the indictment for purposes of establishing jurisdiction. Appellant pleaded "true" to three of the four convictions without objection from trial counsel, and trial counsel ultimately stipulated to those three convictions. The State also read aloud all of the allegations in the indictment and adduced evidence about the convictions, including the one to which appellant did not stipulate, without objections from trial counsel.
Initially, we note that the issue is not whether trial counsel may have had a reasonable strategy to stipulate, or not stipulate, to prior convictions alleged for purposes of establishing jurisdiction. "[T]he decision to stipulate to evidence of past convictions would seem to be a classic example of trial strategy." Stafford v. State , 758 S.W.2d 663, 673-74 (Tex. App.-Houston [1st Dist.] 1988) (reasonable trial strategy to stipulate to prior convictions during punishment stage of trial), rev'd on other grounds , 813 S.W.2d 503 (Tex. Crim. App. 1991). The issue presented in this case is whether, after deciding to stipulate to a jurisdictional prior conviction, counsel could have had any reasonable trial strategy for stipulating to more than the statutorily required number of convictions.
Ordinarily, when the State alleges a prior conviction for jurisdictional purposes, a defendant may stipulate to the allegation and prevent the State from adducing evidence of the prior conviction other than the stipulation. See Hollen v. State , 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (no error to admit the stipulation into evidence); Robles v. State , 85 S.W.3d 211, 213-14 (Tex. Crim. App. 2002) (error to admit the judgment of conviction into evidence). See generally Tamez v. State , 11 S.W.3d 198, 202-03 (Tex. Crim. App. 2000). If the State alleges more convictions than *481 necessary to establish jurisdiction, a defendant may stipulate to the statutorily required number of prior convictions necessary to establish jurisdiction. See Tamez , 11 S.W.3d at 202-03. Under these circumstances, the State may not read the indictment allegations concerning the additional prior convictions or adduce extrinsic evidence of any of the convictions, including the one to which the defendant stipulated. See Hernandez v. State , 109 S.W.3d 491, 493 (Tex. Crim. App. 2003) (per curiam) (error when the State read and proved three prior convictions when the offense of felony driving while intoxicated required proof of only two prior convictions); Tamez , 11 S.W.3d at 202-03 (error when the State read and proved six prior convictions although the defendant offered to stipulate to the required two); Taylor v. State , 442 S.W.3d 747, 751-52 (Tex. App.-Amarillo 2014, pet. ref'd) (reversing conviction when the defendant offered to stipulate to one prior conviction for family-violence assault, but the indictment alleged two prior convictions and the trial court admitted judgments for both convictions).
Of course, admitting to prior convictions can be a matter of sound trial strategy if the prior convictions are admissible. See Huerta v. State , 359 S.W.3d 887, 891 (Tex. App.-Houston [14th Dist.] 2012, no pet.). It is common for a defendant to admit to a prior conviction "because doing so removes the sting from an attack that would otherwise come from the state." Id. at 891-92. And, it may be strategic to open the door to extraneous offenses to show a witness's bias. See Williams v. State , 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).
If a prior conviction is clearly inadmissible, "there can be no reasonable trial strategy for introducing it before the jury." Huerta , 359 S.W.3d at 892 (citing Robertson v. State , 187 S.W.3d 475, 485-86 (Tex. Crim. App. 2006) ); see Ex parte Menchaca , 854 S.W.2d at 132 (holding that there is "no strategic value" to pass over the admission of "prejudicial and clearly inadmissible evidence" (quoting Lyons , 770 F.2d at 534 ) ).[11] But, "[t]o pass over the admission of prejudicial and arguably inadmissible evidence may be strategic." Ex parte Menchaca , 854 S.W.2d at 132 (quoting Lyons , 770 F.2d at 534 ); see also McCook v. State , 402 S.W.3d 47, 52 (Tex. App.-Houston [14th Dist.] 2013, pet. ref'd) (noting that counsel may strategically decline to object to an "arguably inadmissible prior conviction").
Accordingly, we must evaluate whether evidence of appellant's multiple family-violence *482 assault convictions was "clearly inadmissible" or "arguably inadmissible." If the former, trial counsel may have acted deficiently by stipulating to them in addition to the one conviction required to prove jurisdiction. See Ex parte Menchaca , 854 S.W.2d at 132 ; see also Robertson , 187 S.W.3d at 483 n.10 (citing Commonwealth v. Moore , 715 A.2d 448, 452 (Pa. Super. Ct. 1998) ). If the latter, trial counsel could have operated under a reasonable trial strategy of removing the sting that otherwise would come from the State. See Huerta , 359 S.W.3d at 891 ; see also Ex parte Menchaca , 854 S.W.2d at 132.
In its motion for rehearing, the State contends that the convictions were admissible under Rule 404(b) of the Texas Rules of Evidence, or that there were "questions as to their admissibility," such that trial counsel could not be faulted for making a judgment call. The State contends that "appellate courts have found extraneous offenses to be admissible under a wide variety of circumstances" and that "the determination of whether priors are admissible involves some guesswork because of the inherent unpredictability involved with the factor test used by the courts."[12] In particular, the State points to the line of authority holding that extraneous offenses may be admissible under Rule 404(b) to rebut a defensive theory that the complainant is lying or has fabricated the offense.
Rule 404(b) prohibits the admission of evidence of a defendant's other crimes, wrongs, or acts to prove bad character and hence conduct in conformity with that character. See De La Paz v. State , 279 S.W.3d 336, 342-43 (Tex. Crim. App. 2009) (citing Tex. R. Evid. 404(b) ). But, the rule provides that evidence of other crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). This list is not exclusive or exhaustive. De La Paz , 279 S.W.3d at 343. " Rule 404(b) is a rule of inclusion rather than exclusion." Id. (quoting United States v. Bowie , 232 F.3d 923, 929 (D.C. Cir. 2000) ).
As relevant in this case, one of the recognized justifications for the admission of a defendant's extraneous offenses is to rebut a defensive theory of fabrication. See Bass v. State , 270 S.W.3d 557, 562-63 (Tex. Crim. App. 2008) ; Sandoval v. State , 409 S.W.3d 259, 301 (Tex. App.-Austin 2013, no pet.). A defensive theory may be raised through voir dire, opening statements, or cross-examination. See Dabney v. State , 492 S.W.3d 309, 318 (Tex. Crim. App. 2016) (voir dire and opening statements); Bass , 270 S.W.3d at 562-63 (opening statement); Ransom v. State , 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (cross-examination). Merely challenging the complainant's credibility, however, does not automatically open the door to rebuttal evidence. Gaytan v. State , 331 S.W.3d 218, 224 (Tex. App.-Austin 2011, pet. ref'd) ; Bargas v. State , 252 S.W.3d 876, 890 (Tex. App.-Houston [14th Dist.] 2008, no pet.). And, the State may not rebut a defensive theory with bad-act evidence after eliciting the theory through prompting or maneuvering. See Banks v. State , 494 S.W.3d 883, 892-93 (Tex. App.-Houston [14th Dist.] 2016, pet. ref'd) (holding that the State did not elicit defensive *483 theory through its opening statement by discussing the complainant's recantation; extraneous offenses were admissible because the defendant proposed reasons for the recantation during his opening statement and raised the theories on cross-examination of the complainant).
In Bass , the Court of Criminal Appeals held that when the defendant raised the defensive theory in his opening statement that the sexual assault victim had fabricated the offense, the State was entitled to show that the defendant had committed similar sexual assaults against unrelated and unconnected children. 270 S.W.3d at 562-63. In De La Paz , the defendant was convicted of perjury and tampering with evidence by making a false statement in a police report. 279 S.W.3d at 338. In his opening statement, the defendant suggested that one of the State's witnesses would "say whatever the State wanted to hear"; and in his direct testimony, the defendant "inferentially accuse[d the witness] of lying." Id. at 346. Under these circumstances, the Court of Criminal Appeals upheld the admission of appellant's two similar acts of fabrication under Rule 404(b) to rebut his defensive theory that the State's witnesses were lying. See id. at 346-47. It was "at least subject to reasonable disagreement whether the extraneous-offense evidence was admissible for the non-character conformity purpose of rebutting appellant's defensive theory that [the State's witnesses] were lying about these specific events." Id.
In this case, trial counsel's apparent defensive theory was that the complainant had lied to the police about appellant assaulting her and that she "knew how to put him in jail." Trial counsel told the jury it would need to decide whether the complainant was lying now or then. Based on this defensive strategy, trial counsel reasonably might have concluded that appellant's prior convictions for similar offenses were not "clearly inadmissible." In stipulating to the excess prior convictions, trial counsel reasonably might have believed that there would be at least reasonable disagreement about whether the prior convictions would be admissible under Rule 404(b). See ids="8157470" index="97" url="https://cite.case.law/sw3d/279/336/#p342">id. Trial counsel is not deficient for allowing the admission of extraneous-offense evidence when the trial court's admission of the evidence would be within the realm of reasonable disagreement. See Parks v. State , 463 S.W.3d 166, 172 (Tex. App.-Houston [14th Dist.] 2015, no pet.).
Appellant contends that even if the evidence were admissible under Rule 404(b), the evidence was inadmissible under Rule 403. But appellant cites no analogous authorities for this argument. An appellant cannot meet the burden of demonstrating that the trial court would have committed harmful error by overruling an objection when "there is no caselaw clearly supporting appellant's claim." Vaughn v. State , 931 S.W.2d 564, 566-67 (Tex. Crim. App. 1996)
Trial counsel has not been afforded the opportunity to explain her actions, and the record does not demonstrate the alleged ineffectiveness as a matter of law See Lopez , 343 S.W.3d at 143 ; Rylander , 101 S.W.3d at 111. Under these circumstances, appellant has not rebutted the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. See Thompson , 9 S.W.3d at 814. Absent counsel's explanation, the record does not contain sufficient evidence to evaluate the ineffective-assistance issue. See ids="11495619" index="103" url="https://cite.case.law/sw3d/9/808/#p814">id. at 814-15.
E. Failing to Object to Punishment Evidence or Request Beyond-a-Reasonable-Doubt Instruction
Appellant contends that he was deprived of effective assistance of counsel because *484 his trial counsel: "1) failed to object to the State questioning Appellant about his prior arrests without proof of conviction or evidence beyond a reasonable doubt; 2) failed to object to multiple exhibits showing Appellant was charged with greater offenses than he was convicted; 3) failed to object to misconduct contained in Appellant's prior petitions to revoke probation; and 4) failed to request that the jury be instructed not to consider evidence of Appellant's prior bad acts unless they have first been proven beyond a reasonable doubt."
Article 37.07, Section 3, of the Code of Criminal Procedure identifies evidence that is admissible during the punishment phase of a trial. In relevant part:
[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.
Tex. Code Crim. Proc. art. 37.07, § 3(a).
A trial court may not admit evidence of extraneous misconduct unless the evidence "is such that the sentencing entity (either judge or jury) can rationally find the defendant criminally responsible for the extraneous misconduct." Smith v. State , 227 S.W.3d 753, 759-60 (Tex. Crim. App. 2007). Once the evidence is admitted, "the sentencing entity must actually find (and if it is a jury, it must be instructed it must find) the defendant criminally responsible to a level of confidence beyond a reasonable doubt before considering the extraneous misconduct evidence against him in assessing his punishment within the legislatively prescribed range." Id. at 760 ; see also Delgado v. State , 235 S.W.3d 244, 252 (Tex. Crim. App. 2007) ("[T]he trial judge must sua sponte instruct the jury at the punishment phase concerning [ Article 37.07 ], including the fact that the State must prove any extraneous offenses beyond a reasonable doubt.").
The only type of evidence that must be proved beyond a reasonable doubt is an unadjudicated offense or bad act. Bluitt v. State , 137 S.W.3d 51, 54 (Tex. Crim. App. 2004). Thus, a beyond-a-reasonable-doubt instruction is not required concerning proof of prior convictions and deferred adjudications that are part of the defendant's criminal record. See id.
1. No Deficient Performance Regarding Evidence of Total Number of Prior Arrests
Appellant testified during the punishment phase. On cross-examination, the State questioned appellant as follows:
Q. How many times have you been arrested in your life?
A. Quite a few.
Q. If you had to put a number on it, what would you say?
A. 16, 17.
Q. Would it surprise you that the computer records show 25 total arrests?
A. And that's for all major offenses?
Q. For any offense that you've been arrested for within the TCIC/NCIC system. You've had 25 arrests. Does that sound right?
A. (Nods head affirmatively). Around there, yes, sir.
*485 On appeal, appellant contends that trial counsel was deficient for not objecting to this evidence based on a lack of proof that appellant committed the offenses that were the bases for his arrests.
To show ineffective assistance based on counsel's failure to object to evidence, appellant must show that the trial court would have committed error in overruling such an objection. Vaughn , 931 S.W.2d at 566. An appellant cannot meet this burden when "there is no caselaw clearly supporting appellant's claim." Id. at 566-67.
Appellant refers to Walker v. State , in which the San Antonio Court of Appeals found a defendant's trial counsel deficient when counsel, among other deficiencies, opened the door to evidence of the defendant's prior arrests for specific offenses. 195 S.W.3d 250, 262 (Tex. App.-San Antonio 2006, no pet.). The court held that counsel was deficient, after counsel testified at the motion-for-new-trial hearing, when counsel did not know the answer to the question that opened the door because counsel had not investigated the defendant's criminal history. See ids="8410462" index="112" url="https://cite.case.law/sw3d/195/250/#p262">id.
Walker involved the admission of evidence concerning specific unadjudicated offenses. The case does not clearly support appellant's claim. Appellant cites no authority suggesting that a trial court abuses its discretion by allowing the State to inquire of the defendant generally how many times he has been arrested without reference to any specific unadjudicated offenses. Accordingly, the presumption of reasonable professional assistance has not been rebutted. See Vaughn , 931 S.W.2d at 566-67.
2. No Deficient Performance Regarding Evidence of Greater Offenses Reduced to Adjudicated Lesser Offenses
Appellant contends that trial counsel should have objected to Exhibits 9, 10, 13, 14, and 20, and related testimony showing that appellant had been charged with greater offenses although he pleaded guilty to lesser offenses.[13] Appellant relies on Damian v. State , 881 S.W.2d 102 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd), which, in turn, relies on Davis v. State , 642 S.W.2d 510 (Tex. Crim. App. 1982), for the proposition that "the State may not introduce an information or an indictment of a prior conviction if it includes a description of a greater offense for which the defendant was not ultimately convicted." Damian , 881 S.W.2d at 113.
Notwithstanding the legislative changes to Article 37.07, Section 3, after the Davis decision,[14] the law in this regard is unsettled. The Court of Criminal Appeals has held that, in proving a defendant's criminal *486 record during the punishment phase, the pleadings-including indictments and other charging instruments-are admissible although they allege an offense greater than the one for which the defendant was convicted. See Fairris v. State , 515 S.W.2d 921, 923 (Tex. Crim. App. 1974) (judgment admissible when it showed the defendant had been charged with robbery by firearms but convicted of robbery by assault). Citing Fairris , the Court of Criminal Appeals held that "the fact that a felony offense was reduced to a misdemeanor" was admissible under Article 37.07. Gamble v. State , 717 S.W.2d 14, 16 (Tex. Crim. App. 1986). This court followed Fairris , holding that the trial court did not err by admitting a judgment showing that the defendant had been charged with aggravated robbery but ultimately convicted of simple robbery. See Edwards v. State , 632 S.W.2d 908, 910-11 (Tex. App.-Houston [14th Dist.] 1982, pet. ref'd). The Dallas Court of Appeals has followed Fairris , as well. See Webb v. State , 840 S.W.2d 543, 547-48 (Tex. App.-Dallas 1992, no pet.) (indictment alleging murder was admissible when defendant had been convicted of the lesser offense of aggravated assault).
The Court of Criminal Appeals has "repeatedly declined to find counsel ineffective for failing to take a specific action on an unsettled issue." State v. Bennett , 415 S.W.3d 867, 869 (Tex. Crim. App. 2013) ; see also Ex parte Chandler , 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) ("[T]he rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized ...." (quotation omitted) ). At best, the law is unsettled whether a charging instrument alleging a greater offense than the conviction is admissible as part of the defendant's criminal history. Because the law on this matter is unsettled, appellant cannot show that trial counsel was deficient. See Hebert v. State , 489 S.W.3d 15, 23 (Tex. App.-Houston [14th Dist.] 2016, no pet.). Appellant cannot show that that trial court would have committed error by overruling the objection. See ids="6798496" index="124" url="https://cite.case.law/sw3d/489/15/#p23">id. On a silent record, we cannot hold that appellant's trial counsel was deficient in this regard.
3. No Deficient Performance for Failing to Object to Exhibit 19
Appellant contends that trial counsel was ineffective for failing to object to Exhibits 12 and 19 because they contained allegations related to probation violations. In particular, Exhibit 12 included a petition to revoke probation alleging that appellant possessed a controlled substance and drove while intoxicated. Exhibit 19 included a motion to revoke probation alleging that appellant committed a theft.
Assuming without deciding that a bare allegation of an unadjudicated offense contained in a motion to revoke probation is inadmissible at punishment, trial counsel could not have performed deficiently by failing to object to Exhibit 19 because the only offense alleged was ultimately adjudicated. Exhibit 19 alleges that appellant stole a power washer on or about July 8, 2003. Exhibit 15 includes the conviction for that offense. Evidence of a prior conviction is admissible as criminal history under Article 37.07 and does not trigger the beyond-a-reasonable-doubt requirement. See Bluitt , 137 S.W.3d at 54. Appellant has not shown that had counsel objected to Exhibit 19, the trial court would have committed error by overruling it. See Vaughn , 931 S.W.2d at 566 ; Barfield , 464 S.W.3d at 72.
4. No Prejudice Regarding Other Allegations of Ineffectiveness
Assuming without deciding that trial counsel was deficient for not objecting to Exhibit 12 and for failing to request a beyond-a-reasonable-doubt instruction concerning *487 this unadjudicated offense, appellant has not shown prejudice.
To prove ineffective assistance of counsel, an appellant "must show that prejudice occurred with a probability 'sufficient to undermine confidence in the outcome.' " Ex parte Rogers , 369 S.W.3d 858, 862-63 (Tex. Crim. App. 2012) (quoting Thompson v. State , 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) ). Regarding alleged ineffective assistance during the punishment phase of trial, an appellant must "prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable verdict." Id. at 863 (quoting Ex parte Cash , 178 S.W.3d 816, 818 (Tex. Crim. App. 2005) ). "It is not enough to show that trial counsel's error had some conceivable effect on the outcome of the punishment assessed." Id.
The scant evidence of two allegations concerning the possession of a controlled substance and driving while intoxicated was not particularly inflammatory or highly prejudicial in the context of the entire trial. Cf. id. at 864-65 (prejudice shown by counsel's failure to object to "particularly inflammatory" and "highly prejudicial" testimony from the victim of an extraneous sexual assault). The jury already had before it evidence of appellant's lengthy criminal history of sixteen prior convictions, which included multiple violent offenses. One of the sixteen convictions was for driving while intoxicated; and appellant freely admitted during trial that he had consumed a controlled substance as he was a "pothead." Thus, the allegedly inadmissible evidence was largely cumulative of, and less prejudicial than, the other evidence favoring a lengthy sentence. Cf. Martinez v. State , 313 S.W.3d 358, 369 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd) (no egregious harm from the omission of a beyond-a-reasonable-doubt instruction in part because the jury likely would have assessed the same life sentence in light of the defendant's lengthy criminal history).
Under these circumstances, appellant has not shown that but for counsel's deficient performance, the sentencing jury would have reached a more favorable verdict than seven years' confinement. Appellant has not shown prejudice.
III. CONCLUSION
Appellant's sole issue is overruled. The trial court's judgment is affirmed.

But see See Martin v. State , 795 S.W.2d 289, 292 (Tex. App.-Houston [14th Dist.] 1990, no pet.) (holding that a defendant is not required to plead "true" or "not true" to allegations of prior convictions used for jurisdictional purposes, distinguished from the procedure for convictions alleged for purposes of enhancement at punishment).

Other evidence showed that appellant's friend lived about seven blocks from appellant and the complainant.

While relaying this information, the complainant held up a cell phone and appeared to read from it.

Appellant focuses on the following testimony concerning the written statement:
Q: It says, "I do wish to pursue criminal charges." You circled "I do," correct?
A: Yes.
....
Q: Okay. So isn't it true that you said, quote, Michael came home drunk and started telling me to get out, bitch-
A: Yes.
Q: -is that true? And isn't it also true that you said that he couldn't find his phone and thought that I had thrown it-that you had it, excuse me-that you-he thought you had his phone, right? Isn't that true?
A: That's what I wrote.
Q: Okay. And isn't it true that you stated that he threw you on the bed?
A: That's what I wrote.
Q: And isn't it also true that you stated that, "He started beating me"?
A: That's what I wrote.
Q: And isn't it also true that you stated that he was beating you in the back of the head?
A: That's what I wrote.
Q: And is it also true that you stated in a writing, "I do want to file charges"?
A: That's what I wrote.

The State also showed appellant Exhibits 4 and 9 through 17 and asked appellant questions such as, "Is that you?"; "Are these documents pertaining to you?"; and "Is that your signature?" These exhibits were admitted during punishment and concern appellant's criminal history. See infra note 8.

The April 2009 conviction was one of the jurisdictional allegations from the indictment, but not one to which appellant stipulated.

The paragraph appeared as follows:
A felony Assault Family Violence offense requires proof of a prior family violence conviction, but by the agreement of the State and the defendant that element is not contested, therefore no evidence of the prior convictions is necessary, and that jurisdictional element is satisfied. You are further instructed that the jurisdictional prior convictions may not be used for any other purpose in determining guilt of the defendant on the charged occasion.

Exhibit 4 included the complaint, information, affidavit, and judgment for appellant's April 2009 conviction for "assault causes bodily injury family violence" against a woman he went to high school with. Exhibit 9 included an indictment for appellant assaulting his brother in July 2013, elevated to a felony by the April 2009 conviction, and a docket sheet showing that appellant pleaded guilty to a reduced charge of misdemeanor assault. Exhibit 9 relates to Exhibit 6, the November 2013 judgment of conviction. Exhibit 10 included the indictment and a docket entry showing a plea of guilty in July 2015 for the prior assault against the complainant. Exhibit 11 included the complaint with affidavit, plea agreement, and judgment for appellant's September 2008 felony theft conviction. Exhibit 12 included the indictment, docket entries, plea agreement, and judgment for appellant's May 2011 felony theft conviction. Exhibit 12 also included a petition for revocation of a probated sentence, alleging among other things that appellant possessed a controlled substance, i.e., alprazolam, in September 2011 and drove while intoxicated in November 2011. And Exhibit 12 included a plea agreement on the motion to revoke and a judgment revoking community supervision. Exhibit 13 included the indictment, plea agreement, and judgment for appellant's April 2009 conviction for attempted escape from custody. Exhibit 14 included, among other things, an indictment for appellant's unlawful restraint by striking a person with his hand and forcing that person into his vehicle, appellant's guilty plea to the lesser-included offense of misdemeanor assault, and a judgment for that July 2001 conviction. Exhibit 15 included an information, complaint, and judgment for a July 2003 conviction of a Class B misdemeanor theft concerning a power washer and cash. Exhibit 16 included an information, complaint, and orders granting and revoking community supervision for appellant's February 1999 conviction for evading arrest. Exhibit 17 included the information, complaint, and judgment for appellant's January 2007 conviction for criminal mischief. Exhibit 18 included the information, complaint, and judgment for appellant's August 2007 conviction for interfering with an emergency call. Exhibit 19 included the information, complaint, order granting community supervision, motion to revoke, and a January 2004 order revoking community supervision for possessing a prohibited weapon; and the revocation order found that appellant stole a power washer in July 2003. Exhibit 20 included the information, complaint, and judgment for appellant's July 2005 conviction for failure to display a valid drivers' license, which had been reduced from the charge of driving with a suspended or invalid license. Exhibit 21 included an information, complaint, and judgment for a November 2011 conviction for driving while intoxicated. Exhibit 22 included an information, complaint, and judgment for appellant's January 2007 conviction for unlawfully carrying a handgun.

The complainant also testified at the punishment phase in support of appellant's character.

Synthesizing their testimony, the evidence would show that appellant was asleep about seven blocks away from the complainant at about 2:30 a.m. and 9:00 a.m. Thus, the witnesses' testimony did not directly contradict the complainant's statement to police that appellant returned home at about 4:00 a.m. and assaulted her. See Perez , 310 S.W.3d at 895 & n.6 (reasoning, given the witness's testimony that the defendant went to sleep at about 10:00 p.m., that it was "questionable whether this even functions as an alibi defense" for an offense that occurred at about 10:00 p.m.; noting that an alibi defense is based on the "physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time " (quotation omitted) ).

See also Ex parte Skelton , 434 S.W.3d 709, 722 (Tex. App.-San Antonio 2014, pet. ref'd) ("Where a defendant's credibility is central to her defensive strategy, it is not sound trial strategy to allow the introduction of inadmissible evidence that directly impairs the defendant's credibility without objection."); Lemons v. State , 426 S.W.3d 267, 272 (Tex. App.-Texarkana 2013, pet. ref'd) ("Extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel may be ineffective." (quotation omitted) ); Garcia v. State , 308 S.W.3d 62, 68 (Tex. App.-San Antonio 2009, no pet.) ("Given the inherently prejudicial nature of extraneous offense evidence, the fact that the evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that Garcia's defense rested almost entirely on his credibility, there could have been no reasonable trial strategy for Garcia's counsel to elicit and open the door to the similar extraneous offense and the numerous instances of 'bad acts.' "); Stone v. State , 17 S.W.3d 348, 349 (Tex. App.-Corpus Christi 2000, pet. ref'd) (holding, on a silent record, that "no reasonably competent attorney could have believed that introducing that evidence [of a prior conviction for murder] amounted to sound trial strategy"); Brown v. State , 974 S.W.2d 289, 293 (Tex. App.-San Antonio 1998, pet. ref'd) ("Extraneous offenses are inherently prejudicial and when counsel fails to object to numerous extraneous and prejudicial matters, counsel is ineffective.").

See generally Paul S. Milich, The Degrading Character Rule in American Criminal Trials , 47 Ga. L. Rev. 775, 778-79 (2013) ("The history of the 'other uses' exception, currently known as Rule 404(b), is one of inexorable expansion, ultimately swallowing all but remnants of the prohibition against character evidence.... In sum, the character rule has become porous with exceptions and unpredictable in application." (footnotes omitted) ).

See supra note 8.

Over the years, the Legislature has amended this statute to expand the range of misconduct evidence that a trial court is authorized to admit at a punishment hearing. Smith , 227 S.W.3d at 760. Before 1989, only evidence of the defendant's prior criminal record and general reputation and character was admissible. See ids="8401825" index="144" url="https://cite.case.law/sw3d/227/753/#p759">id. at 759. Based on the earlier definition of "prior criminal record," courts construed the statutory language "generally to prohibit evidence of unadjudicated extraneous offenses." Id. In 1989, the Legislature amended the statute to permit the introduction of "any matter the court deems relevant to sentencing," which included the defendant's prior criminal record. Id.
When courts continued to prohibit the admission of unadjudicated offenses, the Legislature amended the statute again in 1993. Id. The Legislature deleted the definition of "prior criminal record" and explicitly allowed the admission of extraneous crimes or bad acts shown beyond a reasonable doubt to have been committed by the defendant or for which the defendant could be held criminally responsible. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759; see also Smith , 227 S.W.3d at 759.