

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00089-CR

———————————————————

WILLIAM EDWARD MUIRHEAD, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 59,229-B

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant William Edward Muirhead appeals the trial court's denial of his motion for new trial based on his claim that he was denied his constitutional right to effective assistance of counsel. Specifically, Muirhead alleges that his retained attorney failed to adequately investigate the facts of his offense and offer mitigating evidence at his open-plea hearing. Muirhead also claims that his attorney failed to properly inform him of the potential consequences of his plea. After holding a hearing on Muirhead's motion for new trial, the trial court denied the motion. We have reviewed the record and cannot conclude the trial court abused its discretion in denying Muirhead's motion for new trial based on his claims of ineffective assistance of counsel. We therefore affirm the trial court's judgment.

## I. Background

### 1. Muirhead's burglary of Dr. Stephen Farr's home

On September 20, 2017, Wichita Falls police officers responded to a 911 call placed from the residence of Dr. Stephen Farr. Upon entering Dr. Farr's home, police officers saw a broken window and blood. Officers heard a man yelling from the upstairs area of the home. When the officers went upstairs, they found an elderly man, later identified as Dr. Farr, standing in the doorway of a bedroom covered in blood. Officers described Dr. Farr as looking "gruesome."

At the same time, the officers heard another man, later identified as Muirhead, yelling and screaming. Officers found Muirhead lying in a small gap between a bed

2

and a wall. Muirhead appeared "extremely agitated," and his ranting made no sense to the officers. One officer at the scene believed that Muirhead was intoxicated.

An officer noticed "[a] lot of blood" in a nearby bathroom. The officer also saw that the toilet tank's lid had been removed and was sitting on the bathroom counter. The lid had blood on it. The officer later learned that Muirhead beat Dr. Farr with the toilet tank lid.

Dr. Farr and Muirhead were subsequently transported to the hospital. In the days following the attack, Muirhead appeared much less agitated; he responded to questions appropriately and could engage in civil, peaceful conversations.

### 2. Muirhead hires attorney Greg Merkle to defend him and enters a plea of nolo contendere.

Muirhead was indicted,[1] and he hired Greg Merkle to represent him. With Merkle's assistance, Muirhead waived his right to a jury trial and entered an open plea of nolo contendere to the trial court.[2] Prior to entering his plea, Muirhead participated in a presentence investigation interview. During his interview, Muirhead

---

[1]The indictment alleged that Muirhead

> did then and there intentionally or knowingly enter a habitation, without the effective consent of Stephen Farr, the owner thereof, and attempted to commit or committed the felony offense of Aggravated Assault, and did then and there display a deadly weapon, to-wit: a ceramic toilet tank lid, that in the manner of its use or intended use was capable of causing death or serious bodily injury, during the commission of the assault.

[2]A plea of nolo contendere has the same legal effect in a defendant's criminal case as a guilty plea. *See* Tex. Code Crim. Proc. Ann. art. 27.02(5).

disclosed that he was under the influence of drugs when he burglarized Dr. Farr's house and beat him with the toilet tank lid.

Before accepting Muirhead's plea, the trial court admonished him orally and in writing as to the range of punishment for the offense of burglary of a habitation as well as to the consequences of his plea. Muirhead signed the written admonishments, and at his plea hearing, he confirmed that he understood the range of punishment for the offense as well as the consequences of this plea. Muirhead informed the trial court that his lawyer, Merkle, had reviewed the admonishments with him and that he understood them. Merkle signed the written admonishments as well.

As a part of his plea, Muirhead affirmed that any future discovery of facts would be "inconsequential to the defense of [his] case." He stipulated under oath to the truth of evidence necessary to support his conviction, averred that he was entering the stipulation freely and voluntarily, and recognized that if he were to later claim that he was innocent of the crime, the State could charge him with aggravated perjury.

In another plea document, Muirhead represented that he "fully underst[ood] what offense he [was] charged with," that he was aware of his constitutional and statutory rights, that he had been given a "sufficient opportunity to talk to and consult with" Merkle, and that he was "totally satisfied with the competence and effectiveness of" Merkle's representation.

4

Merkle affirmed in writing that Muirhead had a rational understanding of the proceedings against him and that Muirhead understood the effects of the documents he had signed.

At his plea hearing, Muirhead told the trial court that he had suffered from mental-health issues in the past but that there was nothing about his mental condition at the time of the open-plea hearing that prevented him from understanding the proceedings. He also told the trial court that he was making his plea freely and voluntarily. Merkle informed the trial court that Muirhead was competent to stand trial.

The trial court found in writing, upon examining Muirhead, that he was mentally competent to enter his plea, that he was aware of the plea's consequences, and that Muirhead's plea and evidentiary stipulation were freely and voluntarily made.

### 3.    Muirhead and the State presented evidence at the plea hearing.

At the plea hearing, after the trial court, Muirhead, and Merkle discussed the effects of Muirhead's plea and the papers he had signed, the State presented evidence concerning the burglary Muirhead had committed and its effect on Dr. Farr and his family.

In Muirhead's defense, Merkle presented testimony from Muirhead's mother, Carol Muirhead; his psychiatrist, Dr. Adam Butera; and Muirhead himself. Carol testified that Muirhead has suffered from physical and mental-health problems. She told the trial court that two months before he broke into Dr. Farr's home and

attacked him, police attempted to admit Muirhead to a state mental hospital, but he was denied admission due to his high blood pressure.

Carol testified that on the morning of the day he burglarized Dr. Farr's home, Muirhead was having "weird dreams." Muirhead subsequently called 911. Emergency workers transported him to the hospital. The hospital attempted to have Muirhead admitted to a state mental hospital, but he was again denied because of his high blood pressure. The hospital released Muirhead later the same day. That night, after Carol went to sleep, Muirhead broke into Dr. Farr's home and beat him.

According to Carol, after Muirhead's release from the hospital following the burglary, he could not recall any of the events on the night of the burglary. Muirhead returned to the hospital in October of 2017 with other medical issues and suffered a stroke in 2018.

Merkle also presented testimony from Dr. Adam Butera, Muirhead's treating psychiatrist. Dr. Butera had been treating Muirhead for depression and anxiety since 2014. Dr. Butera stated that Muirhead told him about an incident that occurred two months before he committed the burglary. Muirhead told Dr. Butera that police had grabbed him and confiscated his gun. Muirhead stated that police took him to a state mental hospital but because of his high blood pressure, he was taken to the emergency room of a medical hospital where his high blood pressure was treated. Dr. Butera also testified that on the day of the burglary, prior to the burglary, Muirhead had been seen at a hospital for high blood pressure, and that the notes from

Muirhead's admission described him as confused and as having "difficulty remembering." At that time, the hospital performed a brain scan. The brain scan showed no bleeding in the brain, no mass, and no swelling.

Dr. Butera opined that Muirhead suffers from hypertensive encephalopathy, a high-blood-pressure condition that can cause mental confusion and altered consciousness. He testified that a person who has hypertensive encephalopathy might not remember his past actions. Dr. Butera testified that Muirhead had told him (like he had told Carol) that he did not remember the events associated with the burglary of Dr. Farr's house. Dr. Butera, however, testified that he could not say that Muirhead was suffering from hypertensive encephalopathy at the time he committed the burglary because he did not have the opportunity to assess Muirhead at that time. Moreover, Dr. Butera stated that he would not expect someone with hypertensive encephalopathy to "take a toilet seat and hit somebody in the head."

Additionally, Dr. Butera testified that upon Muirhead's admissions to the hospital in September 2017, both before and after he burglarized Dr. Farr's home, he tested positive for opiates and cannabinoids. Dr. Butera also acknowledged that Muirhead's medical records reflected that he informed hospital personnel that he takes "Xanax, hydros[,] and other fun pills he can find." Dr. Butera characterized Muirhead's acknowledgement of taking "fun pills" as "sound[ing] like abuse."

Merkle also offered testimony from Muirhead at the plea hearing. Muirhead testified that he takes several prescription medications for high cholesterol and high

7

blood pressure. He testified, however, that he did not remember anything about the September 2017 burglary. Muirhead asked the trial court to defer adjudication of his guilt and to place him on probation.

During cross-examination, when asked whether he had used marijuana, Muirhead responded, "I guess I tested positive for marijuana[,] so it had to have been that." Muirhead then testified that he did not remember using marijuana before the burglary but that his son told him that had he had smoked marijuana that day "to see if it helped [his] pain any better than the pills." He denied that he had abused cannabinoids except "[j]ust [the] day" of the burglary.

At the end of the open-plea hearing, Merkle emphasized that Muirhead did not have a violent history, that his high-blood-pressure issues may have contributed to the offense, and that he did not remember what had occurred. Merkle asked the trial court to defer adjudication of Muirhead's guilt and to place him on probation. In doing so, Merkle recognized that Muirhead could not be convicted *and* placed on regular probation, "It has to be deferred." Merkle argued, "[The probation] could be monitored, and the Court would have that hammer over him, over that entire time, where it could come back if there's any problem and give him anywhere from five to 99 years or life in prison." After hearing the State's closing argument in response, the trial court found Muirhead guilty and sentenced him to forty years' confinement.

## 4. Muirhead claims that Merkle was ineffective and files a motion for new trial.

Shortly after he was sentenced, Muirhead hired new counsel and filed a motion for new trial claiming that Merkle was ineffective. At the hearing on Muirhead's motion for new trial, he called three witnesses: Dustin Nimz, a local defense attorney; Merkle; and himself.

Nimz testified that Merkle should have hired a neurologist or a forensic psychologist to determine if Muirhead was suffering from brain damage at the time that he committed the burglary. According to Nimz, Merkle's failure to do so constituted ineffective assistance. Nimz conceded, however, that the evidence showed that Muirhead had ingested cannabinoids on the day he committed the burglary, and that voluntary intoxication cannot support a mental-health defense. Nimz also agreed that Merkle's knowledge of Muirhead's voluntary intoxication could have impacted his decision to not pursue a mental-health defense.

Nimz further testified that Merkle was ineffective for allowing Muirhead to plead open to the trial judge because she had only been on the bench for about a month and had no "real track record" available to use to predict what type of sentence she would impose. Nimz conceded, however, that given Dr. Farr's years of service as a dentist in the Wichita Falls area, a jury would have likely considered him a sympathetic victim and would have found Muirhead's offense "worthy of punishment."

Merkle, who has practiced law for forty years and represented thousands of defendants, testified that he and Muirhead initially planned to pursue an insanity defense and try the case in front of a jury. He stated, however, that after he learned that Muirhead's actions the night of the burglary may have been a reaction to some "bad drugs," he did not believe that an insanity defense was viable. Merkle's belief regarding the insanity defense was strengthened when he was informed that Muirhead's medical records showed he was using cannabinoids at the time he committed the burglary. Merkle testified that he did not believe an insanity defense would be successful. Merkle stated

> In discussing it with Dr. Butera, quite frankly, I did not think that a jury would buy it in light of my client's behavior if we did it in front of a jury, and I think an insanity defense is very hard to sell. It's good on TV but not in reality. I didn't think it would sell to a jury. I think they would hear the phone call, the witnesses, and they would convict him, and if they were the ones deciding punishment, the punishment would be extremely severe.
>
> . . . .
>
> . . . I believed that if we went to trial with the insanity defense to a jury, they would not, based on the evidence, support that. They would find him guilty, and their punishment would be more severe than the route we took.

Merkle believed that a trial court, if choosing to find Muirhead guilty rather than defer adjudication of his guilt, would assess a sentence that would be less than a jury would assess. Concerning the open plea to a relatively new judge, Merkle testified

that he had "put [the case] off" several times to try to get an indication on the likely sentence that the trial court might assess.

With respect to the claim that he had failed to adequately investigate Muirhead's case, Merkle emphasized that in addition to speaking to Dr. Butera, Muirhead's treating psychiatrist, at least four times before the plea hearing, he had obtained and reviewed "all of" Muirhead's records from hospitalizations (including records from Muirhead's July 2017 and September 2017 hospital stays), ambulance records, and police records. Regarding his alleged failure to speak with a neurologist, Merkle testified, "I didn't think it was necessary. In talking with Butera and the family, there was more of an indication that this may have been a reaction to . . . some bad drugs." More specifically, Merkle indicated that he had learned from Muirhead's family that Muirhead may have had a reaction to K2—a synthetic cannabinoid that is much stronger and more dangerous than regular cannabis.

On questioning by the State, the following exchange occurred:

> Q. And [you] had learned about [Muirhead's cannabinoid use] from family members of the defendant, including the defendant, himself?
>
> A. And from the defendant, it was - - To clarify, the answer would be, yes, but from the defendant was what some other family member had told him, to be clear.
>
> Q. And that gave you very little hope that by virtue of the voluntary intoxication he was going to . . . be successful in any kind of defense of insanity?
>
> A. I did not think it would be successful.

11

Concerning his discussion with Muirhead about the consequences of his plea, Merkle testified that "throughout representation" and close to the plea hearing, he had explained the parole consequences of being convicted and sentenced to an offense involving a deadly weapon.[3]  He testified that even given the parole-related concern about pleading nolo contendere to an offense that involved a deadly weapon, Muirhead's strategy was to take responsibility for his offense and to enter the plea of nolo contendere with the hope of being placed on deferred-adjudication community supervision.

As for Muirhead, contrary to his written averment in his plea papers, he testified that he had not been "well-represented."  On cross-examination, however, Muirhead admitted that no one had forced him to enter a plea of nolo contendere.

After considering the parties' evidence and arguments, the trial court denied Muirhead's motion for new trial.  In its order denying the motion, the trial court found that Merkle was credible, that Muirhead had been "admonished pursuant to the law," that Muirhead had "made a knowing and intelligent waiver of his rights," and that Muirhead had entered his nolo contendere plea freely and voluntarily.

## II.    Effective Assistance of Counsel in Plea Proceedings

When an appellant raises the issue of ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion.  *State*

---

[3]According to Merkle, he met with Muirhead on "at least ten" occasions "if not more."

*v. Herndon*, 215 S.W.3d 901, 905 n.4, 906–07 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling, and we will reverse only if no reasonable view of the record could support the trial court's finding. *Charles v. State*, 146 S.W.3d 204, 207–08 (Tex. Crim. App. 2004), *superseded by statute on other grounds by* Tex. R. App. P. 21.8(b), *as recognized in Herndon*, 215 S.W.3d at 905 n.5.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. This right extends to the plea-bargain process. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 370–71 (1985); *Ex parte Evans*, 537 S.W.3d 109, 111 (Tex. Crim. App. 2017). To establish ineffective assistance, a defendant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999). Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was

13

not deficient. *Nava*, 415 S.W.3d at 307–08. The constitutional right to effective assistance of counsel does not guarantee errorless counsel. *Shilling v. State*, 977 S.W.2d 789, 791 (Tex. App.—Fort Worth 1998, pet. ref'd).

To establish prejudice when a defendant claims counsel's alleged deficient performance resulted in a guilty plea, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370; *Ex parte Lewis*, 537 S.W.3d 917, 923 (Tex. Crim. App. 2017); *see also Lee v. United States*, 137 S. Ct. 1958, 1965–67 (2017) (holding that even a defendant with no realistic defense to a charge may still be able to show prejudice when counsel's bad advice resulted in a guilty plea). In determining whether a defendant would not have pleaded guilty but for counsel's deficient advice, we consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

## III. Muirhead did not meet his burden to show that Merkle failed to perform an adequate investigation or that any inadequate investigation prejudiced him.

In his first issue, Muirhead claims that Merkle was ineffective because he failed to conduct a sufficient investigation into the facts of his case. We disagree. Merkle conducted a thorough investigation into the facts of Muirhead's offense and into the possible defenses that Muirhead could assert at a trial and at the open-plea hearing.

**A counsel's investigation of the facts must be reasonable.**

Counsel for a defendant in a criminal case must independently investigate facts. *Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). But counsel "is not required to investigate every conceivable line of evidence, no matter how unlikely the effort would be to assist the defendant." *Ex parte Donato*, No. 02-16-00006-CR, 2016 WL 673668, at *4 (Tex. App.—Fort Worth Feb. 18, 2016, pet. ref'd) (mem. op., not designated for publication); *Cantu v. State*, 993 S.W.2d 712, 718 (Tex. App.—San Antonio 1999, pet. ref'd) ("[T]he duty to conduct an investigation . . . is not absolute."). Counsel's discovery of certain facts within an investigation may lead to a decision that the investigation of further facts is unnecessary. *Butler*, 716 S.W.2d at 54; *see also Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

The reasonableness of a decision to not investigate must be considered in light of all of the circumstances and must be assessed by applying heavy deference to the decision. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006). "When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Id.* A conviction will not be reversed for a failure to investigate unless the consequence of the failure "is that the only viable defense available to the accused is not advanced." *Donald v.*

*State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g); *Bahr v. State*, 295 S.W.3d 701, 712 (Tex. App.—Amarillo 2009, pet. ref'd).

### 1.    Merkle's investigation of the facts and defenses was reasonable.

Merkle began his representation of Muirhead in September 2017, shortly after the burglary had occurred.  During his representation, Merkle consulted with Muirhead's treating psychiatrist, Dr. Butera, on four occasions.  He also (1) met with Muirhead on at least ten occasions, (2) reviewed police records from Muirhead's July 2017 suicidal incident, (3) reviewed records related to Muirhead's admission to the hospital in July 2017, (4) reviewed records related to both of Muirhead's September 2017 hospital stays (before and after the burglary), (5) reviewed records from Muirhead's transport by ambulance to the hospital following the burglary, and (6) reviewed 2018 hospital records related to Muirhead's stroke.

Muirhead relies on attorney Nimz's assertion that Merkle should have consulted a forensic psychologist or neurologist in order to develop potential defenses of insanity, diminished capacity, or the commission of an involuntary act to assert that Merkle's investigation was deficient.  The strategic choices that a lawyer makes, however, are "virtually unchallengeable" if made after a thorough investigation of the law and relevant facts.  *Strickland*, 466 U.S. at 688; 104 S. Ct at 2065.  And the court presumes that counsel made all significant decisions in the exercise of reasonable professional judgment.  *Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992).

16

This presumption does not change merely because another lawyer may have used a different strategy. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984).

Merkle's strategic choices regarding Muirhead's case were made after a thorough investigation of the law and relevant facts. Merkle testified that he and Muirhead initially planned to assert an insanity defense at trial. Merkle changed his mind, however, after he learned that Muirhead was intoxicated when he committed the burglary. Merkle testified that Muirhead's family told him that the burglary had resulted from a "reaction to . . . some bad drugs." A police officer who observed Muirhead at the scene of the robbery testified that Muirhead appeared to be intoxicated. And when Muirhead was admitted to the hospital following the burglary, he informed hospital staff that he had taken "Xanax, hydro[,] and other fun pills he [could] find." Muirhead tested positive for opiates and cannabinoids at the hospital both before and after on the day that he burglarized Dr. Farr's home. During his presentence investigation interview, Muirhead stated that he was "under the influence of drugs or alcohol" when he committed the burglary.

Because insanity caused by voluntary intoxication is not a defense to an offense, Merkle believed that Muirhead should not assert an insanity defense. *See Ex parte Howard*, 425 S.W.3d 323, 323–34 (Tex. Crim. App. 2014) ("Texas law prevents the consideration at guilt of evidence of insanity caused by voluntary intoxication."). Merkle testified that because he knew Muirhead was intoxicated at the time of the offense and after discussing the likelihood of prevailing on an insanity or

diminished capacity defense with Muirhead, he rejected a strategy of relying on those defenses. Moreover, Merkle stated that he did not believe it was necessary to obtain the assistance of a neurologist or forensic psychologist because he and Muirhead had agreed to rely on Muirhead's hypertensive encephalopathy (high blood pressure) condition as a defense. This defense was suggested by and supported by Muirhead's treating psychiatrist, Dr. Butera. Merkle testified that Dr. Butera informed him that Muirhead's hypertensive encephalopathy condition could have confused him and led him to break into Dr. Farr's home believing that it was his own home.

Accordingly, at the open-plea hearing, Merkle presented testimony from Dr. Butera regarding Muirhead's hypertensive encephalopathy condition. Dr. Butera opined that based on his review of Muirhead's medical records and his expert knowledge and research, Muirhead had suffered from hypertensive encephalopathy which may have caused him to suffer from an altered consciousness. Dr. Butera based his opinion, in part, on references to Muirhead's high blood pressure in July 2017 and September 2017—medical records that coincided with incidents of mental confusion at those times. He further explained that when he saw Muirhead after September 2017, at times when Muirhead's blood pressure had been lowered to normal levels through medication, Muirhead's "mental status was clear" and he was "oriented to person, place[,] and situation." Dr. Butera testified, "I've seen him nine times since the assault, and each time he was clear-headed and lucid, presumably because he's on his blood pressure pills now[.]"

Merkle limited his investigation to the defense of hypertensive encephalopathy after he learned that Muirhead's intoxication had possibly caused him to commit the burglary. He testified that his strategy was to seek the trial court's mercy by presenting evidence on how Muirhead's mental condition, caused by the condition of hypertensive encephalopathy, may have contributed to the offense. Merkle believed that asserting a defense of insanity in light of Muirhead's voluntary intoxication would be ineffectual. *See Cueva v. State*, 339 S.W.3d 839, 848 (Tex. App.—Corpus Christi– Edinburg 2011, pet. ref'd) (holding that when the facts adduced at trial and at any hearings concerning ineffectiveness do not show that the defensive issue in question would have been viable, trial counsel is not deficient for failing to further investigate and pursue that defense at trial). Muirhead was not deprived of a viable defense; Merkle presented evidence that Muirhead's hypertensive encephalopathy condition could have caused him to commit the offense. *See Donald*, 543 S.W.3d at 477 (holding that a conviction will not be reversed for a failure to investigate unless the consequence of the failure "is that the only viable defense available to the accused is not advanced").

After applying a heavy measure of deference to Merkle's decision to limit his investigation, we cannot conclude that Muirhead met his burden of showing by a preponderance of the evidence that his trial counsel's representation was deficient. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Moreover, even had Muirhead met the first prong of *Strickland*, Muirhead has not

19

shown a reasonable probability that, but for Merkle's error in failing to obtain the services of a neurologist or forensic psychiatrist, he would not have pleaded guilty and would have insisted on going to trial; Muirhead has not shown that such witnesses were available to testify or shown what their testimonies would have been. And in the absence of any evidence in the record indicating what the results of an investigation of Muirhead's mental health might have revealed or what the testimony from the additional witnesses would have been, his arguments amount to assertions that the failures to investigate and call additional witnesses had a conceivable effect on the outcome of the trial, which is insufficient to support a claim of ineffective assistance. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (holding that a defendant who complains about trial counsel's failure to call witnesses must show the witnesses were available and that he would have benefitted from their testimony); *Edwards v. State*, Nos. 03-17-00309-CR, 03-17-00310-CR, 03-17-00311-CR, 2018 WL 1077755, at *5 (Tex. App.—Austin Feb. 28, 2018, no pet.) (mem. op., not designated for publication) (overruling ineffective-assistance claim based on counsel's alleged failure to investigate mental-health issues because the record contains no evidence of what a further investigation would have revealed or what the testimony from additional witnesses would have been); *Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.— Houston [14th Dist.] 2017, pet. ref'd) (explaining that ineffective-assistance claim "based on trial counsel's general failure to investigate" will fail absent "a showing of what an investigation would have revealed that reasonably could have changed the

20

result of the case" and overruling issue because defendant "did not present any evidence regarding what" investigation would have revealed). Because Muirhead has failed to sustain his burden under *Strickland*, we overrule Muirhead's first issue.

**IV.    Muirhead did not meet his burden to show that Merkle was deficient by failing to inform him of the consequences of his nolo contendere plea.**

In his second issue, in one sentence, Muirhead claims that Merkle was ineffective because he failed to inform him of the consequences of his plea of nolo contendere. The record, however, belies Muirhead's claim.

The record reflects that Muirhead signed the written admonishments at his plea hearing and confirmed that he understood the range of punishment for the offense as well as the consequences of this plea. Muirhead informed the trial court that his lawyer, Merkle, had reviewed the admonishments with him and he understood them. Muirhead swore that his judicial stipulation to the facts of the offense was made freely and voluntarily and without duress. Muirhead represented that he understood that based on the evidentiary stipulation he had signed, the trial court could find him guilty.

For his part, Merkle testified that he had explained the potential parole consequences of Muirhead's plea of nolo contendere to Muirhead before Muirhead entered the plea.

The trial court also informed Muirhead of the consequences of his plea. At the open-plea hearing, the trial court confirmed that (1) Muirhead knew that he was

charged with burglary, (2) Merkle had discussed the indictment with him, and (3) he was aware that the trial court could impose punishment of up to confinement for life. The court also ensured, by questioning Muirhead and Merkle, that Muirhead understood the nature of the proceedings and was competent to stand trial. Finally, the trial court determined that Muirhead had discussed the plea documents he had signed with Merkle and that he had understood the effects of the documents before signing them. The trial court found that Muirhead had knowingly and intelligently waived constitutional and statutory rights and that he had entered the nolo contendere plea freely and voluntarily.

We find nothing in the record to indicate that Muirhead was unable to consult with Merkle or did not understand the nature of the proceedings against him. In contrast, the record reflects that Muirhead was fully aware of the consequences of his plea.

Muirhead also claims that Merkle was ineffective because he allowed him to enter a plea "before a trial court judge [who] had been on the bench just a couple of months." We disagree. At the hearing on the motion for new trial, Merkle testified that Muirhead's strategy was to be placed on community supervision and avoid confinement. Merkle explained that he believed Muirhead's plea of nolo contendere would give him the best chance to obtain that result. After assessing the facts of Muirhead's offense—including Dr. Farr's demeanor in the 9-1-1 call, the photos depicting Dr. Farr's bloody injuries, and Muirhead's positive test for cannabinoids

22

following the offense—Merkle concluded that if Muirhead took his case to a jury, the jury would convict him and would impose an "extremely severe" sentence. Merkle characterized the possibilities of a jury finding Muirhead not guilty or finding him guilty and imposing probation as "highly unlikely." Merkle stated that by choosing to the have the trial judge sentence him, it was possible that the court would place Muirhead on a deferred-adjudication community supervision.

Here, the record does not reflect that the decision to have the judge assess punishment was not a tactical strategy. Accordingly, we find no merit in Muirhead's claim that Merkle was ineffective for allowing him to enter his plea of nolo contendere before the judge.

After reviewing the record in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Muirhead's motion for new trial on the basis that Merkle failed to explain the potential parole consequences of Muirhead's plea of nolo contendere or because Merkle allowed him to enter his plea before this particular trial court judge. *Charles*, 146 S.W.3d at 208. We overrule Muirhead's second issue.

## V.  Conclusion

Having overruled Muirhead's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 30, 2021