**Affirmed and Memorandum Opinion filed August 22, 2023.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-22-00354-CR**
**NO. 14-22-00355-CR**

---

**JEROME LELAND COUNTISS II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1653183 and 1653184**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Jerome Leland Countiss II guilty of aggravated robbery with a deadly weapon and aggravated assault of a public servant. He challenges the sufficiency of the evidence supporting the jury's verdict, and he also alleges ineffective assistance of counsel. After reviewing the record and the parties' arguments, we affirm the trial court's judgments.

## Background

A Harris County grand jury indicted appellant on the first-degree felony offense of aggravated robbery with the use of a deadly weapon and the first-degree felony offense of aggravated assault of a public servant. Appellant pleaded not guilty to both charges. The cases proceeded to trial before a jury, which heard the following evidence.

In November 2019, Lakeshia Harris worked the evening shift as a cashier at a convenience store. Appellant entered the store wearing an orange face mask and approached the counter as Harris was "getting ready to close the [cash] drawer" after serving a previous customer. Harris immediately saw that appellant was carrying a gun, which was later identified as a .45 caliber semi-automatic pistol. Harris thought, "I am about to die." Appellant said to Harris, "give me something for my crack pipe." At first, Harris was confused because she did not understand what he was saying because "it was just a shock." But then her response was, "you can have whatever you want." Harris had money in her hand, which she placed on the counter. She then ran out of the store.

Appellant left the store. After Harris saw him leave, she went back into the store, locked the doors, and called 911. Harris also called her boss and "told her that [Harris] had got robbed."

On cross-examination, Harris testified that appellant did not ask her specifically for money. She did not see whether appellant took the money she placed on the counter because she "ran out the door." Harris agreed that she was not physically injured during the incident.

Baytown Police Department ("BPD") Officer Norman Anderson is a certified peace officer. In November 2019, he worked as a patrol officer. On the

2

day at issue, he heard a call on the police radio for available officers to respond to "an armed robbery in progress," which is a priority call. Officer Anderson responded by proceeding to the convenience store. Harris gave Officer Anderson a description of appellant, and a nearby witness indicated the direction in which appellant left on foot. Officer Anderson began searching for a suspect with "a brown jacket and . . . something wrapped around his head." Officer Anderson located someone walking down the street matching that description; the person was later identified as appellant.

Officer Anderson stopped his police car, activated his overhead lights (which automatically activated his dash cam), stepped out of the driver's door, and called for appellant to stop. Officer Anderson drew his service weapon because the suspect was reportedly armed. Officer Anderson saw a "bandanna or something" in appellant's hand but "not a weapon at that point." However, "a second or so" later, Officer Anderson saw that appellant had a gun "[j]ust prior to him firing it."

Officer Anderson heard the shot and saw the muzzle blast. The bullet hit the driver's side headlight of Officer Anderson's car, which was very close to where he was standing: "it wouldn't take an inch or two raising [appellant's] weapon that it would have been right on target for where [Officer Anderson] was standing."

Officer Anderson "returned fire with two shots." Officer Anderson testified that he did not recall appellant turning away from him. Officer Anderson thought appellant "was still actually turned sideways towards" the officer. Officer Anderson "was just shooting at center mass and didn't realize until he had turned that I was actually firing at him from behind." Appellant was non-lethally shot in the buttock and fell to the ground, and Officer Anderson saw appellant "reaching towards his gun," which had also fallen to the ground. Backup officers arrived and

3

secured appellant, who was then transported to a nearby hospital for medical treatment and later to Baytown jail.

BPD Detective Edgar Elizondo investigated the officer-involved shooting. Detective Elizondo spoke with appellant at the jail. Appellant said that "he had been at the hospital all week, so he [did not] understand why he was in custody." Detective Elizondo explained to appellant that he had been in the hospital for a single night, not all week, because appellant had been shot. According to Detective Elizondo, appellant "kept on playing like he didn't know what was going on" and "played dumb."

Detective Elizondo testified that, at the time of trial, BPD "still don't know what was stolen" from the convenience store. According to Harris, she placed $200 on the counter before running out of the store, but Detective Elizondo said that "on the [surveillance] video it doesn't seem like he took money. [BPD] can't tell on the video what exactly was taken."[1]

After the State rested its case-in-chief, appellant moved for a directed verdict on the aggravated robbery charge. Appellant argued that the State did not present any evidence that he stole, or intended to steal, any property. The trial court denied the motion.

Appellant proceeded with his case. Appellant's defensive theory was that he was not guilty by reason of insanity. His aunt, Valerie Vandiver, testified that, prior to the events in question, appellant was going through a separation from his wife and began to visit Vandiver's house "quite often." Vandiver "began to notice almost immediately that something was wrong." In her opinion, "he appeared to

---

[1] In his opening argument, appellant's counsel said, "Ladies and gentlemen, you're going to see that Mr. Countiss took money, agreed, from the cashier area; but you're also going to see that he dropped money on the ground on his way out of the store."

4

have some mental illness going on." As an example, appellant told Vandiver that he had been in recent contact with her father, appellant's grandfather. But Vandiver's father passed away in 2000. Appellant also gave Vandiver and her husband, Archie, bandannas; she testified that appellant told her "that we needed to wear those so he would know that it was us and not the clones of us." Appellant allegedly believed that his mother and sister had been killed and replaced by clones. Vandiver testified that appellant "seemed to be getting more out of touch with reality as time passed."

The day before the events at issue, Vandiver told appellant that he needed to get mental health treatment in order to continue staying at Vandiver's house. Appellant "got angry about that" and got "into a scuffle with" Archie. After Vandiver broke up the scuffle, appellant "jumped in his truck and took off."

On cross-examination, Vandiver agreed that "some of [appellant's] behaviors could also be consistent with drug use" and it was possible that, when appellant was not in her presence, he was using drugs.

At the conclusion of trial, the jury found appellant guilty on both counts as charged. The trial court assessed punishment in each case at forty-five years' confinement, to run concurrently.

**Analysis**

In his first two issues, appellant argues that the evidence is insufficient to support the jury's guilty verdict on the aggravated robbery charge because the State did not prove beyond a reasonable doubt that appellant committed or intended to commit a theft and, relatedly, that the trial court erred in denying appellant's motion for directed verdict premised on the same contention. In his third issue, appellant argues that the evidence is insufficient to support the jury's

5

guilty verdict on aggravated assault of a public servant because there is no evidence that appellant committed aggravated assault against Officer Anderson. Because these three issues turn on the legal sufficiency of the evidence to support a conviction, we address them together. *See Espino-Cruz v. State*, 586 S.W.3d 538, 542 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd); *Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

## A.    Sufficiency of the Evidence

### 1.    *Standard of review*

In determining whether the evidence is legally sufficient to support a conviction, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *see also Braughton v. State*, 569 S.W.3d 592, 607-08 (Tex. Crim. App. 2018). We presume that the jury resolved conflicting inferences in favor of the verdict, and we defer to its determination of the evidentiary weight and witness credibility. *See Braughton*, 569 S.W.3d at 608; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The scope of our review includes all the evidence admitted at trial, whether it was properly or improperly admitted. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper*, 214 S.W.3d at 13.

## 2. *Aggravated robbery*

A person commits the offense of robbery, "if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code § 29.02(a)(2). "In the course of committing theft" means conduct that "occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). The offense of robbery becomes aggravated robbery if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2).

According to appellant, he is not guilty of this offense because there is no evidence that he "took any money or anything of value from the convenience store." Thus, he was not "committing theft." A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. *See id.* § 31.03.

Aggravated robbery requires that an accused use or exhibit a deadly weapon in the course of committing or attempting a theft. *Id.* However, the offenses of robbery and aggravated robbery do not require that a defendant actually complete a theft or obtain the property sought. *See Watts v. State*, 516 S.W.2d 414, 415 (Tex. Crim. App. 1974); *Elizondo v. State*, No. 01-07-00743-CR, 2009 WL 276754, at *3 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, pet. ref'd) (mem. op., not designated for publication). The Court of Criminal Appeals has held that "[n]o completed theft is required in order for the proscribed conduct to constitute the offense of robbery," explaining:

> Section 29.02 is broader in scope than the prior robbery offense, [former Penal Code art. 1408] however, because it applies to violence used or threatened 'in the course of committing theft,' which is defined in Section 29.01 to include not only violent conduct

7

antecedent to a completed theft, but also violence accompanying *an unsuccessful attempted theft* and violence accompanying an escape immediately subsequent to a completed or attempted theft. This factor adds two new methods of committing robbery. The first—use or threat of violence in an attempted theft—simply combines into the robbery offense the prior separate offense of assault with intent to rob, Penal Code art. 1163. The practical effect is to provide an identical penalty range, which is justified *because the conduct is equally dangerous whether or not the theft is completed and it is usually fortuitous that the theft falls short of completion.* The second—use or threat of force in escaping—broadens the scope of robbery. Here, too, the conduct is as dangerous as force or threats antecedent to the theft.

*White v. State*, 671 S.W.2d 40, 42-43 (Tex. Crim. App. 1984) (internal quotation omitted) (emphasis added).

Here, appellant exhibited a semi-automatic pistol to Harris, who was holding cash, and he demanded that she give him something for his crack pipe. Harris put money on the counter before fleeing the store. Although the video was inconclusive, appellant's counsel told the jury that appellant took money off the counter but dropped it before leaving the store.

We conclude that the evidence is legally sufficient to support a finding, beyond a reasonable doubt, that appellant acted while in the course of committing theft. Contrary to appellant's argument, the fact that he did not ultimately and successfully secure possession of another's property is not fatal to the conviction for aggravated robbery. Tex. Penal Code §§ 29.02(a)(2), 29.03(a)(2); *see White*, 671 S.W.2d at 42-43; *accord also Morgan v. State*, 703 S.W.2d 339, 340-41 (Tex. App.—Dallas 1985, no pet.) (the fact that appellant abandoned stolen property before assaulting employee did not render evidence insufficient to support robbery verdict). Further, by exhibiting the gun and making a demand for property, the jury could have reasonably found that appellant was attempting theft with intent to obtain or maintain control of the property. Tex. Penal Code § 29.02(a)(2).

8

In his second issue, appellant challenges the trial court's denial of his motion for directed verdict for the same reasons advanced in his first issue. Because we have concluded that sufficient evidence supports the jury's guilty verdict, we overrule appellant's second issue as well. *See Salazar v. State*, No. 04-10-00086-CR, 2010 WL 4523785, at *2 (Tex. App.—San Antonio Nov. 10, 2010, no pet.) (mem. op., not designated for publication) ("After reviewing the record, we conclude this evidence is legally sufficient to support the jury's verdict; therefore, the trial court did not err in denying appellant's motion for a directed verdict."); *see also Gabriel v. State*, 290 S.W.3d 426, 436 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

### 3. *Aggravated assault of a public servant*

A person commits the offense of aggravated assault "if the person commits assault as defined in § 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code § 22.02(a)(2). A person commits the offense of assault if the person "intentionally or knowingly threatens another with imminent bodily injury." *Id.* § 22.01(a)(2). Aggravated assault is elevated from a second-degree offense to a first-degree offense if committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. *Id.* § 22.02(b)(2)(B).

Appellant argues that the evidence is insufficient to prove that he committed aggravated assault against Officer Anderson because:

> No other officer was on the scene to observe the facts asserted by Officer Anderson. No attempts were made to locate and interview any witnesses who could support the allegations made by Officer Anderson. The Jury only had before it the assertion from a lone law enforcement officer that the events transpired as he alleged.

9

Appellant contends that Officer Anderson is not credible and for that reason the verdict lacks sufficient evidentiary support. This contention is wholly unmeritorious. Appellant's argument turns precisely on the kind of question that the jury alone is empowered to resolve—credibility and weight-of-evidence determinations. *See Cain v. State*, 958 S.W.2d 404, 409 (Tex. Crim. App. 1997). We defer to the jury's determinations of these matters, and we will not substitute our judgment for that of the jury.

Appellant also argues that the State failed to prove that appellant touched or fired the handgun in question and that there is no evidence that the bullet that punctured Officer Anderson's headlight was fired from the handgun allegedly belonging to appellant.

These contentions are likewise unpersuasive. Officer Anderson identified appellant as the assailant who shot directly at him, narrowly missing him by a few inches. This direct testimony is sufficient. The State was not required to provide additional evidence, such as ballistics testing, to buttress Officer Anderson's eyewitness account. *See Jenkins v. State*, No. 06-08-00146-CR, 2009 WL 670722, at *2 (Tex. App.—Texarkana Mar. 17, 2009, pet. ref'd) (mem. op., not designated for publication) ("While the record contains no physical evidence such as fingerprints, ballistics tests, or DNA reports to prove guilt, the absence of such evidence does not prevent the State from proving its case."); *Shipman v. State*, No. 07-96-0105-CR, 1997 WL 254225, at *1 (Tex. App.—Amarillo May 15, 1997, no pet.) (not designated for publication) (rejecting appellant's argument that trial court should have granted an instructed verdict because of the "complete absence of ballistic evidence, linking the [appellant's] gun to the bullet that killed the deceased").

We overrule appellant's first, second, and third issues.

## B.      Ineffective Assistance of Counsel

In his fourth issue, appellant contends that his trial counsel provided constitutionally ineffective assistance by failing to call as a witness a psychiatric or psychological expert.  We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).  Under *Strickland*, the defendant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial.  *Strickland*, 466 U.S. at 687.  Counsel's representation is deficient if it falls below an objective standard of reasonableness.  *Id.* at 688.  But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense.  *Id.* at 691-92.  To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness.  *Id.* at 697.

Our review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance.  *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007); *Donald v. State*, 543 S.W.3d 466, 477 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (op. on reh'g).  If counsel's reasons for his or her conduct do not appear in the record and there exists at least the possibility that the conduct could have been grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.  *See Garza*, 213 S.W.3d at 348.  If counsel has not had an opportunity to explain the challenged actions, we may not find deficient performance unless the conduct was "so

11

outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the majority of cases, the record on direct appeal is simply too undeveloped and insufficient to permit a reviewing court to fairly evaluate the merits of an ineffective assistance of counsel claim. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Robison*, 461 S.W.3d at 203.

Appellant argues that his trial counsel rendered ineffective assistance by not calling an expert witness to testify regarding appellant's alleged insanity. But appellant did not file a motion for new trial, and thus trial counsel has not been provided an opportunity to explain the strategy, if any, for not calling an expert witness. Without an explanation for trial counsel's strategy, we will not engage in speculation. *See Jackson v. State*, No. 14-16-00694-CR, 2018 WL 717040, at *3 (Tex. App.—Houston [14th Dist.] Feb. 6, 2018, no pet.) (mem. op., not designated for publication) ("We do not know what information trial counsel had or how he evaluated the potential benefits and drawbacks of requesting a sanity evaluation or how counsel weighed the various considerations that might have informed the decision. Without an explanation, we only could speculate as to trial counsel's reasons for not requesting a sanity evaluation, and we are not to engage in speculation."); *Stafford v. State*, 101 S.W.3d 611, 613 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (holding that finding counsel ineffective on silent record for failing to request sanity evaluation would call for speculation). Further, the record does not demonstrate that counsel's failure to call a psychiatric or psychological expert was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392. Therefore, we conclude that, under these circumstances, appellant simply has not shown that his trial counsel was ineffective. We overrule appellant's fourth issue.

## Conclusion

We affirm the trial court's judgments.


_____/s/ Kevin Jewell_____
Kevin Jewell
Justice


Panel consists of Justices Jewell, Hassan, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).