# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-21-00206-CR
_____

### DANIELLE PATRICE WOODARD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

_____

**On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 19-10-13313-CR**
_____

### MEMORANDUM OPINION

A jury convicted Danielle Patrice Woodard of aggregate theft. *See* Tex. Penal Code Ann. § 31.03(e)(7). In four issues on appeal, Woodard contends we should reverse her conviction because (1) the trial court didn't charge the jury with her affirmative defense, resulting in egregious harm, (2) the trial court abused its discretion by allowing the State to present inadmissible extraneous character evidence, (3) the jury charge contains an improper comment on the weight of the evidence that suggests to the jury the trial judge believed Woodard was guilty of the

charged offense, and (4) the trial court abused its discretion by taking judicial notice of her motion for continuance and admitting the motion with the attached results of Woodard's COVID-19 test. For the reasons discussed below, we affirm the trial court's judgment.

BACKGROUND

A grand jury indicted Woodard for aggregate theft. The indictment alleges that pursuant to one scheme or continuing course of conduct beginning on or about October 11, 2012, and continuing until on or about August 22, 2016, Woodard unlawfully appropriated funds having an aggregate value of more than $200,000 with the intent to deprive the owner of the property.[1]

The indictment contained two enhancement paragraphs. In Paragraph A, the grand jury stated that, on August 19, 2009, under the name of Danielle Patrice Cormier, Woodard was convicted of felony theft in the 230th District Court, Harris County, Texas, in cause number 1109916 and that conviction became final prior to the commission of the offense mentioned in Count I of the indictment. In Paragraph

---

[1]Under a version of the statute in force at the time, the offense was a first-degree felony when the aggregated property value was $200,000 or more. *See* former Tex. Penal Code Ann. § 31.03(e)(7). In 2015, the legislature amended the monetary value for theft. The value for first-degree felony theft was increased from $200,000 or more to $300,000 or more. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 31.03, 1993 Tex. Gen. Laws 3586, 3638, *amended by* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 10, sec. 31.03(e), 2015 Tex. Gen. Laws 4208, 4213 (codified at Tex. Penal Code Ann. § 31.03(e)(7)).

B, the grand jury stated that on August 19, 2009, Danielle Patrice Woodard was convicted of felony credit/debit card abuse in the 230th District Court, Harris County, Texas in cause number 1000696 and that conviction became final prior to the commission of the offense alleged in Count I of the indictment.

The testimony at trial showed that in May 2010, Woodard began working at Prime Lawn after the company's owner, *Michael*, hired her.[2] Her initial duties included answering the phones, scheduling appointments, data entry, and running the offices. Woodard was also responsible for handling questions about accounts, vendor payments, and checks.

In August 2016, Michael's wife received a phone call from John Deere, informing them that Prime Lawn's account was 247 days past due. Based on the conversation with the John Deere representative, Michael's wife suspected that Woodard was stealing from Prime Lawn. The couple contacted the police, whose investigation revealed that Woodard's theft transactions had cost the company $358,153.96 over a period of four years.

Certified fraud examiner Erin Smith testified that Woodard engaged in three "schemes" to steal from Prime Lawn. In the first scheme, Woodard wrote

---

[2]We refer to the victim referred to in this opinion using a pseudonym to protect his identity. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

unauthorized checks to herself and electronically transferred company cash into her own bank accounts. She then deleted the transactions from the QuickBooks accounting program used by the company. In the second scheme, Woodard used Prime Lawn funds to pay for goods and services for herself, her associates, or other businesses. For example, she made purchases at Nordstrom and made payments on her Nordstrom charge account; paid insurance on her vehicle and her boyfriend, Claude Johnson's, vehicle; paid her student loans; paid Gerber Life Insurance for an insurance policy on her young daughter; paid for Humana health insurance for herself and Claude Johnson, even though Prime Lawn did not offer Humana Insurance; paid for a down payment for a BMW; paid rent for her brother, Dante Cormier; and paid rent for Carl LeBlanc, her other brother. The third scheme was described as "skimming," in which Woodard altered a check received from a Prime Lawn customer and deposited the money in her own bank account.

Woodard prevented Michael from learning of her schemes in multiple ways. For instance, she systematically deleted unauthorized transactions from Prime Lawn's QuickBooks accounting program. She also opened new Prime Lawn credit card accounts without Michael's consent. Woodard posed as Michael on email communications with vendors. Moreover, Woodard obtained administrator privileges on the Verizon phone account and blocked business numbers in Michael's phone.

4

At trial, the defense presented a defense of consent, claiming there was an intimate relationship between Woodard and Michael. Woodard testified that her relationship with Michael developed over time, and in 2011, they began a sexual affair. Dante Cormier testified that he saw Michael and Woodard "[k]issing" and "touching" "[i]n the office" when no one else was there, as well as seeing Michael touch Woodard on "the butt."

Woodard testified that Michael agreed to pay for her apartment, her utilities, and health insurance. She also testified that Michael approved for Woodard to pay for Dante's apartment. Woodard claimed that Michael was aware that she made purchases at Nordstrom with Prime Lawn money, and he was "fine" with those purchases and "would kind of laugh it off." Similarly, Woodard admitted using the Prime Lawn account to pay for her brother's baby shower because she asked Michael.

Woodard acknowledged that her relationship with Michael started to "decrease" in the 2013-2014 period because she began dating another man, Claude Johnson. Despite having a child with Claude in 2014, Woodard testified that her Lexus was paid for using a Prime Lawn account, a fact that she did not try to hide from Michael.

In rebuttal, Michael denied having a sexual relationship or any kind of intimate relationship with Woodard. He denied giving Woodard permission to do

5

whatever she wanted with Prime Lawn funds. Michael's wife said that she did not find any inappropriate e-mails, texts, or behavior between Michael and Woodard. Investigator Smith also testified that after reviewing the records in the case, there was "nothing there but a business relationship."

The State also introduced evidence and testimony pertaining to Woodard's prior felony credit/debit card abuse and theft convictions in both its case-in-chief and during its rebuttal. Woodard had previously been fired from a Marriott hotel position for misusing guests' credit card information and was again caught stealing through a credit card when she was an employee at La Quinta. However, on her application with Prime Lawn, Woodard represented that she had no criminal history. Additionally, the State offered a motion for continuance with the results of Woodard's COVID-19 test after Woodard admitted she has altered documentation in the past. Upon questioning, Woodard admitted to altering the COVID-19 test result from negative to positive, which resulted in the court granting a continuance.

The jury charge contained no affirmative defenses. The jury subsequently returned a verdict finding Woodard guilty of the offense of theft of property greater than $200,000. Woodard pled guilty to the allegation in Enhancement Paragraph A in the indictment and the jury sentenced Woodard to twenty-five years confinement.

ANALYSIS

In issue one, Woodard complains the trial court erred by refusing to instruct the jury on the affirmative defense of mistake of fact. *See id.* § 8.02. Woodard argues that due to her romantic relationship with Michael, she believed the transactions were consented to by Michael. Acknowledging that "defense counsel did not request the defensive instruction or object to the charge," Woodard asks this Court to determine that the failure to instruct egregiously harmed her. *See, e.g., Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g) (concluding that if proper jury charge objection is not made at trial, reversal is proper only for "egregious harm").

In effect, Woodard contends that the trial court was required to submit the instruction *sua sponte* and the failure to do so was erroneous. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (providing that the trial court shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case"). The "duty to instruct on law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge," and may require a trial court to provide the jury with law applicable to the case *sua sponte. Taylor v. State,* 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). Unless a particular statute places a *sua sponte* duty on the trial court to give such an instruction, the trial court generally need not do so because an unrequested defensive issue is not "the law 'applicable to the case.'" Tex. Code

Crim. Proc. Ann. art. 36.14; *see Vega v. State*, 394 S.W.3d 514, 518–19 (Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998)); *Oursbourn v. State*, 259 S.W.3d 159, 178–80 (Tex. Crim. App. 2008). Instead, a defendant must timely request the issue or object to the omission of the issue in the jury charge. *Taylor*, 332 S.W.3d at 487; *Posey*, 966 S.W.2d at 62.

Woodard did not request that the trial court include a jury instruction on the mistake-of-fact defense. Absent that request, she cannot demonstrate error in the charge. *See Vega*, 394 S.W.3d at 519; *Posey*, 966 S.W.2d at 61–62; *see also* Tex. R. App. P. 33.1(a) (requiring complaint to be preserved in the trial court by a timely request, objection, or motion). We overrule her first issue.

In issue two, Woodard complains the trial court erred by allowing the State to present inadmissible extraneous character evidence. At trial, the State offered the judgments of two prior convictions. One conviction was for felony theft. The other was for the state jail felony offense of credit/debit card abuse.

Outside the presence of the jury, the State offered Woodard's prior convictions for credit card abuse and theft to rebut the defensive theory that she had Michael's consent. Defense counsel objected "that any probative value is outweighed of unfair prejudice confuse the issues of the jury [sic]." The trial court did not make a ruling at that time, but subsequently conducted independent legal research. Based on her research, the trial court concluded that the prior convictions

8

were admissible to "negate the defensive theory to show intent, specifically, motive and a lack of mistake. And maybe a plan or some type of design."

When the State offered the pen packet containing the prior judgments of conviction, defense counsel only re-urged his "previous objection relating to the history of the Defendant." The trial court overruled the objection and admitted the convictions into evidence.

On appeal, Woodard complains that her prior felony convictions were inadmissible under Texas Rule of Evidence 609(b) and under Texas Rules of Evidence 403 and 404(b). *See* Tex. R. Evid. 403, 404(b), and 609(b). Yet, preservation of a complaint for appellate review under Texas Rule of Appellate Procedure 33.1(a)(1)(A) requires a timely, comporting objection in the trial court. *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see also* Tex. R. App. P. 33(a)(1)(A). Here, defense counsel raised no objection to the passage of time since her convictions for credit card abuse and felony theft, did not mention Rule 609, or complain about the remoteness of the convictions. Although Woodard filed a motion in limine to require the trial court to hold a hearing outside the presence of the jury to determine whether those convictions were so remote that they are inadmissible under Rule 609(b), a motion in limine does not preserve error. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Because Woodard did not raise a Rule 609(b) objection, she has failed to preserve error. *See id.*

9

Woodard did, however, preserve her Rule 403 objection. Relying on Rule 403, Woodard argues that the probative value of the evidence and testimony pertaining to her prior convictions was not substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. We review a trial court's admission of extraneous offenses or acts under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002) (citation omitted).

Generally, evidence of a crime, wrong, or other act is inadmissible to show bad character and that a defendant acted in conformity with that bad character. *See* Tex. R. Evid. 404(b)(1). However, extraneous-offense evidence may be admissible for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See id.* 404(b)(2); *Moses*, 105 S.W.3d at 626. Extraneous-offense evidence is also admissible to rebut a defensive theory. *See Moses*, 105 S.W.3d at 626 n.4 (citations omitted) (noting such evidence is often admitted to rebut a defensive theory). "A defensive theory may be raised through voir dire, opening statements, or cross-examination." *Donald v. State*, 543 S.W.3d 466, 482 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016) (opening

10

statements and voir dire); *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (opening statement); *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1997) (op. on reh'g) (cross-examination)).

Even if extraneous-offense evidence is admissible for some other purpose apart from showing character conformity, the trial court may still exclude the evidence if the probative value is substantially outweighed by the risk of unfair prejudice. *See* Tex. R. Evid. 403; *see also Moses*, 105 S.W.3d at 626. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (citation omitted).

The Court of Criminal Appeals sets out a non-exclusive list of factors that we should consider when determining whether the probative value of a prior conviction outweighs its prejudicial effect, including:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (footnote omitted).

On appeal, Woodard complains that the trial court did not conduct a Rule 403 balancing test. Once a Rule 403 objection as to the prejudice versus probative value is invoked, the trial court has no discretion whether to engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). However, the trial court is not required to place any findings it makes or conclusions it draws on the record when engaging in the balancing test, and the trial court is presumed to engage in the required balancing test once Rule 403 has been invoked. *Id.* at 195–96. The appellate record does not affirmatively show that the trial court refused to conduct a Rule 403 balancing test. We presume the trial court engaged in a balancing test before admitting the evidence. *See id.* at 195.

Given these facts, the trial court's decision was within the zone of reasonable disagreement. *See Wheeler*, 67 S.W.3d at 888. Thus, it did not abuse its discretion by admitting evidence of Woodard's prior credit card abuse and theft convictions. *Moses*, 105 S.W.3d at 627; *Montgomery*, 810 S.W.2d at 391. "When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent." *Bradshaw v. State,* 65 S.W.2d 232, 236 (Tex. App.—Waco 2001, no pet.). The testimony regarding the prior credit card abuse and theft was probative to rebut Woodard's theory that she had consent to the transactions because of the sexual relationship between her and Michael. The prior convictions also demonstrated that Woodard had a practice of using her employment to make

12

unauthorized expenditures for her own benefit. This testimony strengthened the State's showing of intent, motive, and lack of mistake. The presentation of the convictions did not consume an inordinate amount of time and was not repetitive of evidence already admitted.

Although "an extremely similar extraneous offense always carries the potential to impress the jury of a defendant's character conformity," such inference "can be minimized through a limiting instruction." *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). Woodard was protected from the misuse of evidence because the trial court instructed the jury concerning the use of this, or any extraneous offense evidence. Jurors were told the evidence could only be used if they were persuaded beyond a reasonable doubt that Woodard actually committed the wrongful acts, and even then, they could consider the evidence only in determining Woodard's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in connection with the charged offense and for no other purpose. We overrule Woodard's second issue.

In her third issue, Woodard complains that the jury charge contains an implicit, yet direct, improper comment on the weight of the evidence that suggests to the jury that the trial judge believed Woodard was guilty of the charged offense. Specifically, Woodard asserts that the option of "guilty" above "not guilty" in the charge constitutes an implicit improper comment on the weight of the evidence.

13

Our review for charge error requires we first determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If error is found, we then determine whether the error caused sufficient harm to require reversal. *Id.*

Assuming without deciding that Woodard properly preserved error, we conclude that Woodard has not demonstrated error in the trial court's verdict form. In the charge, the trial court properly instructed the jury about the presumption of innocence, including Woodard's right to produce no evidence and the State's burden to prove each element of the charged offense beyond a reasonable doubt. Absent such proof, the jury was further instructed that it was obligated to acquit Woodard. We presume the jury followed the trial court's instructions in the manner they were presented. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). The presumption that the jury followed the trial court's instructions is rebuttable, but Woodard has pointed to no evidence that the jury ignored the trial court's instructions or that an erroneous instruction in the charge influenced the jury's verdict. *See id.* Likewise, other courts have rejected an argument like the one Woodard makes here, concluding that the placement of "guilty" before "not guilty" in an otherwise proper verdict form does not indicate the trial court holds a bias or is attempting to influence the jury to vote in a particular way. *See Joshua v. State*, 507 S.W.3d 861, 864–65 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (collecting cases). We overrule Woodard's third issue.

In her fourth issue, Woodard complains that the trial court abused its discretion by taking judicial notice of the defense's motion for continuance and admitting the motion with the attached results of her COVID-19 test into evidence, arguing that Texas Rules of Evidence 201 only permits a trial court to take judicial notice of the contents of a court file, not the allegations asserted in the pleadings. The motion for continuance was filed six days before a scheduled trial setting on February 1, 2021, and she requested a 30-day continuance based on Woodard's representation in her motion, which was supported by a document that reported Woodard had tested positive after taking a COVID-19 test on January 23, 2021.

During a discussion at the bench, the State stated that the testimony at trial opened the door about whether Woodard altered the results of the COVID-19 test she attached to the motion for continuance that she filed in January 2021. Defense counsel responded, "We don't have any definitive proof that the COVID-19 record is invalid. We just have some conjecture from the State alleging it is invalid because she can't find the right record." The trial court determined that the evidence raised the issue and allowed the State to question Woodard about it.

After questioning Woodard about the motion for continuance and the COVID-19 test, the State moved to admit the motion for continuance and the test Woodard attached to her motion as an exhibit as "a record from the Court" after the State asked "the Court take judicial notice of one of its filings – under judicial notice." Defense

15

counsel objected, stating "I am going to approach that there is an improper foundation that has been laid for that particular type of document to be admitted." The court overruled the objection and admitted the exhibit, which consists of Woodard's motion for continuance filed January 26, 2021, and Woodard's test result indicating she tested "positive" for COVID-19.

The State argues that Woodard's objection of "improper foundation" is too general to preserve error. We agree. We first note that Woodard voiced no specific objection to the request the State made asking the trial court to take judicial notice of the court's file. As a result, when the trial court took judicial notice of the file, Woodard preserved nothing for our review with respect to the trial court's ruling. *Euziere v. State*, 648 S.W.2d 700, 704 (Tex. Crim. App. 1983) (no error was preserved because no specific objection was raised at trial); *Nguyen v. State*, 982 S.W.2d 945, 948 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

Second, to preserve an error for appeal under Rule 33.1, the party's objection (unless apparent from the context) must be specific enough to "'let the trial judge know what he wants [and] why he thinks himself entitled to it, and [to] do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez v. State*, 306 S.W.3d 308, 312–13 (Tex. Crim. App. 2009) (quoting *Lankson v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *see also* Tex. R. App. P. 33.1(a)(1)(A). "A mere predicate objection,

without more, is insufficient to preserve error." *Cartwright v. State*, 807 S.W.2d 654, 656 (Tex. App.—Beaumont 1991) (citation omitted), *aff'd*, 833 S.W.2d 134 (Tex. Crim. App. 1992). Here, Woodard's objection of "improper foundation" was too general and not specific enough to advise the court that her complaint that the exhibit – including both the motion for continuance and the COVID-19 test results – was not subject to judicial notice. *See Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985) (determining "proper predicate" objection was too general to preserve error); *Edwards v. State*, 497 S.W.3d 147, 164 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (concluding objections to "foundation" and "improper foundation" were too general to advise trial court of complaint).

Third, Woodard alleges in her brief that "the trial court abused its discretion by taking judicial notice not only of the fact that the motion and the COVID-19 results were in the record, but by also taking judicial notice of inadmissible hearsay statements contained within the documents and admitting the exhibit into evidence." However, Woodard never made a hearsay objection at trial. Since the objection made at trial differs from that raised on appeal, no error is preserved for review. *See Euziere*, 648 S.W.2d at 704.

Even if Woodard preserved this error for review, we would not find reversible error. Essentially the same evidence was admitted when Woodard testified. Woodard testified that the reason for the motion for continuance is because she tested positive

17

for COVID-19, but she admitted that she altered the COVID-19 test attached to the motion to reflect that she had tested positive when she did not. Woodard testified that she changed the word "negative" to "positive" in the report she attached to her motion for continuance. She also explained that when her trial was originally set in January 2021, she provided her attorney with the altered test results because he kept asking her for paperwork, she had not received the results of the test, and she expected the results of the test to be positive for COVID-19. Since essentially the same evidence was admitted through Woodard's testimony, Woodard suffered no harm. *See* Tex. R. App. P. 44.2(b) (stating that any error that does not affect a substantial right must be disregarded); *Patterson v. State*, 980 S.W.2d 529, 533 (Tex. App.—Beaumont 1998, no pet.) (concluding where the same evidence was admitted through testimony, the defendant suffered no harm). We overrule Woodard's fourth issue.

Having overruled all Woodard's issues, we affirm the trial court's judgment. AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on March 7, 2023
Opinion Delivered October 4, 2023
Do Not Publish

Before Golemon, C.J., Horton and Wright, JJ.